**Linda M. Liberi TONER, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 79–2033.

United States Court of Appeals, Third Circuit.

Argued Feb. 20, 1980.

Decided June 16, 1980.

Mary Ann Hagan (argued), Philadelphia, Pa., Marcus Schoenfeld (argued), Villanova, Pa., Robert Destro, Milwaukee, Wis., for appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Michael L. Paup, Gilbert S. Rothenberg (argued), Attys. Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before SEITZ, Chief Judge, ROSENN, Circuit Judge, and SHAPIRO, District Judge *.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Linda M. Liberi Toner (the taxpayer) appeals a final decision of the Tax Court that determined a deficiency of $177.41 against her for deductions relating to her educational expenses.

### I.

In 1971, taxpayer became a teacher at St. Clement's, a parochial school in the Archdiocese of Philadelphia. She taught both religious and secular subjects to fifth grade students. At the time of her initial employment, the taxpayer had graduated from high school and had completed two years of a four-year college degree program.

At all relevant times the Archdiocese has only required a high school diploma for its elementary school teachers. Upon commencing employment taxpayer was required by the Archdiocese to sign and did sign an agreement that if she lacked a bachelor's degree she would take a minimum of six college credits each year until she obtained a degree. At the time, a teacher with a bachelor's degree received a higher salary than a teacher with similar teaching experience but without such a degree. In all other respects, the taxpayer had full faculty status at St. Clement's.

In 1973, taxpayer took 15 hours of credit at Villanova University and thereby earned her degree. On her 1973 federal income tax return, taxpayer claimed a deduction in the amount of $906.28 for her 1973 educational expenses. Based on a disallowance of the deduction, a deficiency notice was sent to the taxpayer. The taxpayer thereafter

---

* Hon. Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

filed a timely petition with the Tax Court. The case was assigned to a single judge who filed findings of fact and an opinion that resulted in a decision reflecting a deficiency of $177.41. The judge's decision in turn was reviewed by the full Tax Court, which voted 8 to 7 against the taxpayer. *Toner v. Commissioner*, 71 T.C. 772 (1979). This appeal followed.

## II.

Section 162(a) of the Internal Revenue Code permits deduction of "ordinary and necessary business expenses." On the other hand, § 262 prohibits deductions for personal expenditures. This case presents an issue, the deductibility of educational expenses when the student is already employed, that places these two statutory provisions in tension. The tension is the result of the fact that educational expenses in such a situation by their very nature often contain both personal and business elements.

To resolve this tension, the government has promulgated Treas.Reg. § 1.162–5. Subsection (a) first sets forth the general rule as to when expenditures for education are deductible. Subsection (b) then states certain exceptions when expenses are non-deductible even though the expenditures satisfy (a). The general rule announced in § 1.162–5(a) is:

(a) *General rule.* Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education—

(1) Maintains or improves skills required by the individual in his employment or other trade or business, or

(2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.

It cannot be disputed on this record that the taxpayer's expenditures improved her skill in her existing employment within the meaning of (a)(1). As the Tax Court noted: "The Commissioner concedes that the minimum educational requirement of St. Clement's . . . was graduation from high school, that the [taxpayer] had met such educational requirement when she was employed, and that the education pursued by her in 1973 did in fact maintain or improve her skills as a teacher." 71 T.C. at 775. In addition, because the Archdiocese required the taxpayer to take at least six class credits per year, the expenditures were required by her employer within the meaning of (a)(2). Thus taxpayer's educational expenditures are deductible unless they come within the limits described in subparagraph (b)(2) or (3) of the regulation.

These subsections provide two exceptions to the general rule: educational expenses are not deductible either if the education is necessary to meet the minimum qualifications of the taxpayer's profession or if the education qualifies the taxpayer for a new profession. Because the meaning of the language of subsection (b) is in dispute, we reproduce it in full:

(b) *Nondeductible educational expenditures*

(1) *In general.* Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations.

(2) *Minimum educational requirements.* (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in

order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed.

(ii) The minimum educational requirements for qualification of a particular individual in a position in an educational institution is the minimum level of education (in terms of aggregate college hours or degree) which under the applicable laws or regulations, in effect at the time this individual is first employed in such position, is normally required of an individual initially being employed in such a position. If there are no normal requirements as to the minimum level of education required for a position in an educational institution, then an individual in such a position shall be considered to have met the minimum educational requirements for qualification in that position when he becomes a member of the faculty of the educational institution. The determination of whether an individual is a member of the faculty of an educational institution must be made on the basis of the particular practices of the institution. However, an individual will ordinarily be considered to be a member of the faculty of an institution if (a) he has tenure or his years of service are being counted toward obtaining tenure; (b) the institution is making contributions to a retirement plan (other than Social Securi-

ty or a similar program) in respect of his employment; or (c) he has a vote in faculty affairs.

\*   \*   \*   \*   \*   \*

(3) *Qualification for new trade or business.* (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. The following are examples of changes in duties which do not constitute new trades or businesses:

(a) Elementary to secondary school classroom teacher.

(b) Classroom teacher in one subject (such as mathematics) to classroom teacher in another subject (such as science).

(c) Classroom teacher to guidance counselor.

(d) Classroom teacher to principal.

Upon reviewing subparagraph (b), a five member plurality of the Tax Court held that the taxpayer's expenditures were not deductible under (b)(2). Three concurring members held they were not deductible under (b)(3).

■ Turning first to subsection (b)(2), as a general matter that subsection provides that any expenditure incurred to meet the minimum requirements of a taxpayer's trade or business are not deductible because they are personal. Once the taxpayer meets the minimum requirements of his or her trade, however, additional expenditures are deductible if they satisfy subsection (a), unless they fall within (b)(3), which deals with education that qualifies the taxpayer for a new trade or business.

Subparagraph (b)(2)(ii) defines what constitutes the minimum educational requirements for teachers. The first sentence of (b)(2)(ii) states that the minimum requirement usually is determined by looking to the state law at the time the teacher is first employed. Under Pennsylvania law, however, there are no educational requirements for parochial school teachers. *See* Pa.Stat. Ann. tit. 24, §§ 12–1201 to –1202, 2732 (Purdon).

Thus the relevant portion of (b)(2)(ii) is the second sentence, which states that where there is no state law, the taxpayer has met the minimum requirements "when he becomes a member of the faculty of the educational institution." In the absence of some state law, the effect of this sentence is to leave the definition of minimum requirements to the individual institution.

Because the Archdiocese imposed no minimum requirement other than a high school diploma at the time it first employed the taxpayer in 1971 and because the taxpayer was treated by St. Clement's as a faculty member in all other relevant respects, she became a full member of the faculty in 1971. Accordingly, in 1971 the taxpayer met the minimum requirements of her profession as defined in (b)(2)(ii), which means that the exception in subparagraph (b)(2) is not applicable and does not prohibit the deduction for expenses incurred after 1971.

Neither of the grounds relied on by the majority of the Tax Court mandate a different conclusion. Five members held that the expenditure was nondeductible under (b)(2)(i). They reasoned:

By its terms, [(b)(2)(i)] applies to education which meets the minimum educational requirement "for qualification in his employment *or other trade or business.*" In determining what is the minimum requirement, the regulations also suggest that we look at both "the requirements of the employer" and "the standards of the profession, trade, or business involved." Thus, the provision clearly applies either to education which meets the minimum requirement of the taxpayer's employer *or* to education which meets the minimum requirement of another trade or business.

71 T.C. at 777 (emphasis in original). The plurality concluded that because the taxpayer could now teach in a public school, she was qualified for a new trade and thus (b)(2)(i) precluded a deduction.

Reliance on (b)(2)(i) was misplaced for two reasons. First, subsection (b)(2) generally says that expenditures for meeting minimum qualifications are not deductible. Subsection (i) states a general, objective test, and subsection (ii) states a special rule for teachers. Thus it would seem that no matter what (b)(2)(i) says, (b)(2)(ii) would control under the well-known doctrine of construction that specific rules prevail over more general rules.

Second, even assuming that (b)(2)(i) is relevant, the plurality's reading of it is inconsistent with the language and structure of the regulations. As the quoted passage from the plurality demonstrates, it read the phrase in (b)(2)(i) "for qualification in his employment or *other* trade or business" to mean "for qualification in his employment or [*another*] trade or business." This shifting of the word "other" to "another" is inappropriate. The entire thrust of subsection (b)(2) is directed to the situation where the education is designed to meet the minimum qualifications in the taxpayer's *present* employment, not where the education qualifies her for a profession that is qualitatively different from her present one. Seen in this light, the apparent purpose of the word "other" is to ensure that all types of employment, including trades and professions, are meant to be covered by the regulation. Thus the plurality's reading wrenches "other" out of its context.

By altering the focus of (b)(2) to include other, different trades, businesses, and professions the plurality has read subsection (b)(2) to include the case where the taxpayer becomes qualified for another profession, a situation directly covered by subsection (b)(3). Subsections (b)(2) and (b)(3) serve distinct analytical purposes. Whereas subsection (b)(2) is concerned with minimum qualifications of the taxpayer's present po-

sition, subsection (b)(3) is directed to the situation where the taxpayer's education qualifies her for a new profession. Instead of focusing on minimum qualifications, which in a sense is a quantitative standard, subsection (b)(3) is concerned with whether the duties related to the new position are so qualitatively different from the taxpayer's present position as to make the expenditures personal. Because the plurality's opinion destroys this analytical distinction, its reading of (b)(2)(i) is incorrect.

■ Three members of the majority relied on subsection (b)(3) itself to deny a deduction. The concurring members reasoned that because the taxpayer's bachelor's degree would enable her to teach in public school, she was qualified for a new trade or business.

This reading is directly contrary to the language of (b)(3)(i), which states: "all teaching and related duties shall be considered to involve the same general type of work." Indeed, one of the examples of this principle is where a teacher changes from secondary teacher to guidance counselor. We fail to see how changing from a parochial school elementary teacher to a public school elementary teacher involves any greater qualitative change in the duties associated with the two positions than does the example. Moreover, the fact that parochial teachers instruct in religion makes no difference. Example (b) states that changes in subject matter do not mean that a taxpayer has qualified for a new profession. Given that the regulation states that all teaching is the same, we do not believe that a parochial school teacher who can teach in a public school is qualified for a new profession within the meaning of subsection (b)(3). Indeed, the government has not defended this position on appeal.

Finally, none of the cases relied on by the parties provide an answer to the present question. Due to the rather novel facts, this case seems to be one of first impression. Thus we find the cases to provide little or no guidance. *See generally* 71 T.C. at 788–90 (Goffe, J., dissenting).

Accordingly, neither subsection (b)(2) or (3) bars the deduction under subsection (a). We therefore hold that where there is no greater educational requirement for a parochial school teacher, whether by state law or otherwise, than a high school diploma, and where a teacher satisfies subsection (a), that teacher may deduct the cost of a bachelor's degree under § 162(a) as a business expense.

It is true that permitting the deduction here might seem somewhat of an anomaly. Nevertheless, in enacting the regulation, the government abandoned a subjective test that focused on the taxpayer's motivation in seeking the education for the present objective scheme. If our ruling today causes an undesirable result, the government is free to amend the regulation to rectify the situation.

Given our holding that the regulation permits the deduction, we need not reach the taxpayer's constitutional arguments.

### III.

We will reverse the judgment of the Tax Court.