CHARLES A. AND ELAINE M. ROBINSON, PETITIONERS V.
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13722–78.    Filed April 7, 1982.

Elaine M. Robinson, pro se.
*Scott A. Taylor*, for the respondent.

IRWIN, *Judge*: Respondent determined deficiencies of $380 and $325.82 in petitioners' 1975 and 1976 Federal income taxes. The sole issue presented for our determination is whether a licensed practical nurse may deduct the costs of acquiring a 4-year degree from a school of nursing when such degree entitles her to take an examination for qualification as a registered nurse.

## FINDINGS OF FACT

Petitioners Charles A. Robinson and Elaine M. Robinson, husband and wife, resided at Owatonna, Minn., at the time of the filing of their petition herein. Joint Federal income tax returns for the years 1975 and 1976 were filed by petitioners.

In 1964, Elaine M. Robinson (hereinafter petitioner) was qualified as a licensed practical nurse (LPN) in the State of Minnesota. She has been employed in the nursing field since 1964.

During the years in issue, petitioner was employed on a part-time basis as an LPN at St. Cloud Hospital in St. Cloud, Minn. Petitioner had enrolled in the University of Minnesota School of Nursing in 1974 and was a full-time student at the school in 1975 and 1976. Thus, petitioner's work schedule at the hospital was confined to weekends, holidays, and vacations.

The school of nursing provided its students with a 4-year degree program which entitled its graduates to take an examination leading to qualification as a registered nurse. Petitioner completed the program, and in February 1977, she

passed the Minnesota Registered Nurse Examination and became a registered nurse.

A registered nurse (RN) is more highly skilled and generally has greater independence than an LPN. This is the result of a more intense formal training program required of an RN. While RNs and LPNs are both engaged in the broad area of nursing, there are differences in function and in degrees of judgment which each possesses and utilizes by virtue of educational background. An LPN may not hand out nursing assignments or take verbal drug orders from doctors. Professional judgment is primarily a responsibility of the RN who generally supervises the duties delegated to the LPN. For example, LPNs must have drug dosages checked by an RN before administration to patients. An LPN's work characteristically entails no supervisory duties.

On her joint 1975 and 1976 tax returns, petitioner deducted a total of $2,626 and $2,560, respectively, as expenses relating to her enrollment in the 4-year degree program at the University of Minnesota School of Nursing.[1]

In his notice of deficiency dated November 2, 1978, respondent disallowed petitioner's total educational expense deductions.

## OPINION

Section 162(a)[2] allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Expenditures made by an individual for education are deductible as ordinary and

---

[1]Petitioner's education expenses for 1975 and 1976 were detailed on her return as follows:

|  | 1975 | 1976 |
|---|---|---|
| Tuition | $1,149 | $1,155 |
| Books and supplies | 324 | 185 |
| Total (taken as itemized deductions) | 1,473 | 1,340 |
| Transportation | 1,040 | 1,140 |
| Parking | 113 | 80 |
| Total (taken as employee business expenses) | 1,153 | 1,220 |
| Total expenses relating to eduction | 2,626 | 2,560 |

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.

necessary business expenses if the education maintains or improves skills required by the individual in his employment or other trade or business. Sec. 1.162–5(a), Income Tax Regs. However, this general rule does not apply if the expenditures fall within either of two specified categories. Educational expenses which are incurred to meet the minimum educational requirement for qualification in a taxpayer's trade or business or which qualify the taxpayer for a new trade or business are nondeductible expenditures. Sec. 1.162–5(b), Income Tax Regs.

Petitioner seeks deductions for expenditures relating to her acquisition of a 4-year degree from the University of Minnesota School of Nursing. This 4-year degree entitled petitioner to take an examination leading to qualification as an RN. She contends that she has been in the trade or business of nursing since 1964 as an LPN and that the program of study undertaken at the School of Nursing merely served to maintain or improve her skills in the field. Moreover, petitioner asserts that the program did not qualify her for a new trade or business as she alleges that an RN performs similar duties to those assigned to an LPN.

Respondent, while conceding that petitioner was in the business of practical nursing, emphasizes that the degree program qualified petitioner for the new trade or business of an RN with duties and responsibilities of a different nature from those associated with practical nursing.

If the education in question qualifies the taxpayer to perform significantly different tasks and activities than he or she could perform prior to the education, then such education is deemed to qualify the taxpayer for a new trade or business. *Browne v. Commissioner*, 73 T.C. 723, 726 (1980); *Diaz v. Commissioner*, 70 T.C. 1067, 1074 (1978); *Glenn v. Commissioner*, 62 T.C. 270, 275 (1974); *Weiszmann v. Commissioner*, 52 T.C. 1106, 1110 (1969), affd. 443 F.2d 29 (9th Cir. 1971). The petitioner, upon whom the burden of proof rests (*Welch v. Helvering*, 290 U.S. 111 (1933)), must therefore prove that the education pursued leading to her licensure as a registered nurse did not qualify her to perform significantly different tasks than she was performing as an LPN. We believe petitioner has failed to shoulder that burden.

First, we note Minnesota law which clearly defines the practices of practical nursing and registered (professional) nursing which are separately licensed. Minn. Stat. Ann. sec. 148.29 subd. 4 provides in pertinent part:

> Subd. 4. Practical nursing shall mean the performance for compensation of any of those services in observing and caring for the ill, injured, or infirm, in applying counsel and procedure to safeguard life and health, in administering treatment prescribed by a licensed health professional, or treatment and medication prescribed by a licensed doctor of medicine, osteopathy, or dentistry, or a licensed podiatrist, which are commonly performed by licensed practical nurses and which require specialized knowledge and skill such as are taught or acquired in an approved school of practical nursing, but which do not require the specialized education, knowledge and skill of a registered nurse.

Registered (professional) nursing is defined at Minn. Stat. Ann. sec. 148.171(3) as follows:

> (3) The practice of professional nursing means the performance for compensation or personal profit of the professional interpersonal service of: (a) providing a nursing assessment of the actual or potential health needs of individuals, families, or communities, (b) providing nursing care supportive to or restorative of life by functions such as skilled ministration of nursing care, supervising and teaching nursing personnel, health teaching and counseling, case finding and referral to other health resources; and (c) evaluating these actions.
>
> The practice of professional nursing includes both independent nursing functions and delegated medical functions which may be performed in collaboration with other health team members, or may be delegated by the professional nurse to other nursing personnel. Independent nursing function may also be performed autonomously. The practice of professional nursing requires that level of special education, knowledge, and skill ordinarily expected of an individual who has completed an approved professional nursing education program as described in section 148.211, subdivision 1.

Thus, it is evident that the State of Minnesota envisions a very definite qualitative difference between an RN and an LPN. While there is little doubt that some functions of registered and practical nurses are identical, RNs provide assessments of actual or potential health needs and are empowered to delegate nursing functions to other nursing personnel. LPNs do not possess these latter powers. Furthermore, practical nurses are prohibited from engaging in or administering treatment which requires the specialized education, knowledge, and skill of an RN. Indeed, such specialized

education is required under Minnesota law for qualifications as an RN. See Minn. Stat. Ann. sec. 148.211 and sec. 148.291.[3]

Pursuant to Minnesota regulation,[4] the program of study leading to licensure as an RN generally envisions a degree

[3]148.211 Licensing

Subdivision 1. [License by examination.] An applicant for a license to practice as a registered nurse shall apply to the board for license by examination on forms prescribed by the board and pay a fee in an amount determined by rule. An applicant applying for re-examination shall pay a fee in an amount determined by rule. In no case shall fees be refunded.

Before being scheduled for examination the applicant shall provide written evidence verified by oath that he (a) is of good moral character, (b) is in good mental health, (c) meets secondary education requirements as determined by the board and other preliminary qualification requirements the board may prescribe by rule, and (d) either has completed a course of study in a professional nursing program approved by the board or is enrolled in the final term of study in such program. * * *

The applicant shall be required to pass a written examination in the subjects the board may determine. Each written examination may be supplemented by an oral or practical examination. An applicant failing to pass any portion of the examination shall be deemed to have failed the examination and may apply for reexamination in the subjects or sections failed.

Refusal to supply information necessary to determine the qualifications of an applicant may result in denial of the application.

Upon submission the applicant of an affidavit of graduation from an approved nursing program as well as proof that the applicant has passed the examination, paid the required fees and met all other requirements stated in this subdivision, the board shall issue a license to the applicant.

148.291. Examination; licensing

Subdivision 1. Qualifications. An applicant for a license to practice nursing as a licensed practical nurse shall apply to the board for examination on forms provided by the board and pay a fee in an amount determined by rule. An applicant applying for re-examination shall pay a fee in an amount determined by rule. In no case shall fees be refunded.

Before being scheduled for examination the applicant shall provide written evidence, verified by oath that he (a) is of good moral character, (b) is in good mental health, (c) meets secondary education requirements as determined by the board and any other preliminary qualification requirements the board may prescribe by rule, and (d) either has completed an approved course for the training of licensed practical nurses or is enrolled in the final term of study in such program.

Refusal to supply information necessary to determine the qualifications of an applicant may result in denial of the application.

Upon submission by the applicant of an affidavit of graduation from an approved nursing program as well as proof that the applicant has passed the examintion, paid the required fees and met all other requirements stated in this subdivision, the board shall issue a license to such applicant.

[4]Pursuant to Minn. Stat. Ann. sec. 214.001 (effective July 1, 1976), the Minnesota legislature delegated the power to formulate the standards of certain occupations, including registered and practical nursing, to boards consisting of occupation members. Prior to the enactment of this statute, to qualify as a registered nurse, one was required by statute to complete a course of study of at least 22 months at an accredited school of professional nursing. Minn. Stat. Ann. sec. 148.211 subd. 1 (amended 1976). The parallel requirement for

program offered by a university, college, or junior college. 7 Minn. Code Agency R. sec. 5.1060. The program of study leading to licensure as an LPN is between 9 and 12 months in duration and may be offered by certain high schools and vocational-technical schools as well as colleges and universities. 7 Minn. Code Agency R. sec. 5.2050 and sec. 5.2081. Additionally, the curriculum of a practical nursing course is required to include only 25 percent of the nursing content which is included in a degree program required of registered nurses. 7 Minn. Code Agency R. sec. 5.2080.

Furthermore, the job responsibilities of an RN and an LPN at St. Cloud hospital are distinguished by the hospital as follows:

There are differences in function and in degrees of judgment which each possesses and utilizes by virtue of educational background. All nursing which requires professional judgment must be the responsibility of the Registered Nurse and this judgment is utilized in determining when all or part of a patient's nursing care must be done by the Registered Nurse and when nursing activities may be delegated to Licensed Practical Nurses or other health care personnel.

Thus, it is evident that the hospital views registered nursing as a significantly different occupation from practical nursing. The level of authority delegated to an RN is appreciably greater than that granted to an LPN, and, in all events, the LPN is subject to the supervisory powers of an RN. For example, LPNs must have drug dosages checked by an RN before drug administration to patients. Verbal drug orders from doctors may not be accepted by an LPN. Nor may an LPN hand out nursing assignments, a primary responsibility of an RN. These, among other differences, highlight the differing levels of responsibility of an RN and an LPN. It is on the strength of these distinctions made by petitioner's employer, St. Cloud Hospital, and on the basis of the relevant State law that we feel constrained to disallow petitioner's claim.

In our view, the case herein is analogous to *Glenn v. Commissioner, supra,* and *Reisinger v. Commissioner,* 71 T.C.

---

licensed practical nursing was the completion of at least a 9-month course for the training of licensed practical nurses. Minn. Stat. Ann. sec. 148.291 subd. 1 (amended 1976).

568 (1979). In *Glenn*, the taxpayer, a licensed public accountant, undertook a special review course required of those who seek licensure as a certified public accountant in Tennessee. We distinguished the two trades or businesses of public accountancy and certified public accountancy by highlighting the higher level of competence of a C.P.A. from which flows the common understanding that opinions and certificates of a C.P.A. are more authoritative and valuable than those of a public accountant. We also noted that the C.P.A. is capable of more varied responsibility as he can hold himself out to the public as qualified to advise and represent clients as to tax matters.

In *Reisinger*, the taxpayer, who had been an LPN, undertook a program of study leading to qualification as a certified physician's assistant. In disallowing the taxpayer's claimed education expenses, we pointed to the fact that a physician's assistant is trained for an evaluative function, including preliminary diagnoses, and performs minor surgical services (e.g., removal of foreign objects from eyes, minor sutures, etc.), and physical examinations. On the basis of these facts, we concluded that the taxpayer's educational expenditures qualified her for a new trade or business.[5]

Similarly, the instant case presents a situation where petitioner, owing to her course of study at the University of Minnesota School of Nursing, became qualified to perform duties and exercise judgment which she theretofore was prohibited from doing by State regulation and hospital policy. Petitioner argues that, despite her qualification as an RN, she actually performed the same duties whether she was an LPN or an RN. However, the differences in tasks performed is not the relevant inquiry. *Glenn v. Commissioner, supra; Weiler v. Commissioner*, 54 T.C. 398, 401–402 (1970) (educational expenses qualifying certified public accountant to become an attorney were nondeductible). Rather, an objective standard of whether the education *qualifies* the taxpayer for a new trade

---

[5]In *Reisinger v. Commissioner*, 71 T.C. 568 (1979), the taxpayer's claimed deduction was denied on two grounds. We noted initially that the taxpayer had abandoned her nursing practice several years prior to her enrollment in a course of study, and, thus, she was not in the business of practical nursing when she commenced her educational program.

or business is to be applied. Sec. 1.162–5(b)(1), Income Tax Regs.; *Browne v. Commissioner, supra; Bodley v. Commissioner*, 56 T.C. 1357, 1361 (1971). Accordingly, the fact that petitioner's education lead to her qualification as an RN removes any attendant expenditures from the realm of deductibility regardless of the actual change in petitioner's employment duties.

We are aware of the difficulty that courts have encountered in the area of defining the parameters of certain trades or businesses. To clearly articulate the distinction between the maintenance and refinement of skills in one business and the qualification of an individual for another related business presents a formidable task in certain factual settings. Compare *Toner v. Commissioner*, 623 F.2d 315 (3d Cir. 1980), revg. 71 T.C. 772 (1979), and *Laurano v. Commissioner*, 69 T.C. 723 (1978) (Canadian teacher was entitled to deduct educational costs qualifying her to teach in New Jersey), with *Sharon v. Commissioner*, 66 T.C. 515 (1976), affd. 591 F.2d 1273 (9th Cir. 1978) (costs incurred by New York attorney for a California bar review course were nondeductible), *Davis v. Commissioner*, 65 T.C. 1014 (1976) (social caseworkers and professors of social work are in different businesses), and *Glenn v. Commissioner, supra*. In *Toner v. Commissioner, supra*, the Third Circuit held that a parochial school teacher who took courses leading to a bachelor's degree which enabled her to teach in public school was entitled to deduct the costs of her education. The Court, in seizing upon respondent's regulation at section 1.162–5(b)(3),[6] announced that if the regulation envisions no change of

---

[6]The relevant portion of sec. 1.162–5(b)(3), Income Tax Regs., provides as follows:

(3) *Qualification for new trade or business.* (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. The following are examples of changes in duties which do not constitute new trades or businesses:

(*a*) Elementary to secondary school classroom teacher.

(*b*) Classroom teacher in one subject (such as mathematics) to classroom teacher in another subject (such as science).

(*c*) Classroom teacher to guidance counselor.

(*d*) Classroom teacher to principal.

business when a classroom teacher becomes a guidance counselor, then it is equally certain that an erstwhile parochial school teacher has not changed businesses when she joins the faculty of a public school. The Court saw little, if any, qualitative difference in duties between the two teaching posts.

While it is thus abundantly clear that a "teacher is a teacher is a teacher is a teacher" (*Toner v. Commissioner*, 71 T.C. 772, 790 (1979) (Goffe, J., dissenting) ), we believe the instant facts to be distinguishable from *Toner*. The heightened level of professional judgment, the increase in skills one can perform, and the supervisory powers exercised by an RN serve to distinguish the RN from the LPN in job function and responsibility. Accordingly, the sweeping view of teaching, as expressed in *Toner*, is inapplicable to the types of nursing involved herein.

To reflect the foregoing,

*Decision will be entered for the respondent.*