THERESA M. MALEK AND EDWARD J. MALEK, SR., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Malek v. Commissioner
Docket No. 17258-80.
United States Tax Court
T.C. Memo 1985-428; 1985 Tax Ct. Memo LEXIS 202; 50 T.C.M. (CCH) 792; T.C.M. (RIA) 85428; August 15, 1985. *202 In 1977, petitioner-wife was required by her employer to obtain a college degree in order to continue her employment as an office manager and a consultant. That year, she entered a liberal arts bachelor of science degree program in management and communications and incurred educational expenses for tuition, fees, and books. She was awarded the degree in 1981. Held: By obtaining this initial bachelor's degree, petitioner-wife was qualified to pursue a number of different trades or businesses that required a bachelor's degree as a minimum entry-level qualification. Therefore, petitioner-wife's educational expenditures were part of a program of study that led to qualifying her in a new trade or business and, thus, are not deductible as ordinary and necessary business expenses. Sec. 162(a), I.R.C. 1954; sec. 1.162-5(b)(3), Income Tax Regs.
Steven C. Bahls and Edward J. Pronley, for the petitioners. James M. Klein, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1977 in the amount of $455. The issue for decision is whether petitioners may deduct under section 162 *203 [1] educational expenses incurred by petitioner Theresa M. Malek. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Theresa M. Malek (hereinafter sometimes referred to as "Malek") and Edward J. Malek, Sr., wife and husband, resided in Union Grove, Wisconsin. Malek is employed by The Fidelity Complex, Inc. (hereinafter sometimes referred to as "Fidelity") [2], a psychology-based consulting firm, and has been employed there since February 14, 1972. Malek performs a myriad of duties for Fidelity, including the following: 1. Manage and coordinate the day-to-day activities of the firm, with its three offices in separate buildings. 2. Coordinate, plan, and perform all advertising, marketing, and promotional functions. 3. Supervise secretarial and receptionist duties. 4. Process accounts receivable, accounts payable, and the payroll; prepare budgets. 5. Evaluate and purchase needed office equipment. *204 6. Participate in financial planning. 7. Corporate secretary and member of Board of Directors. In addition to the above-listed duties, Malek also performs the duties of a management consultant and an outplacement consultant. As a management consultant, Malek provides consulting services for client firms. These services include attitude surveys, wage compensation studies, and various personnel functions. As an outplacement consultant, Malek performs outplacement consulting services for client firms. Outplacement services are performed for terminated employees of the client firms in order to assist these employees in finding other jobs. These services include teaching job-searching and job-interviewing skills, preparing resumes and cover letters, and providing mass mailings to prospective employers. Malek has been performing these duties for Fidelity from April 12, 1974, to at least 1981 with little or no change. Malek devotes the clear majority of her working time to management and outplacement consulting, with only about 10 percent of her time going to her duties as office manager. On January 5, 1977, Malek *205 received an interoffice letter from Fidelity's president, directing Malek to obtain a college degree as a condition of continuing her employment. The letter states as follows: TO: MRS. TERRY MALEK, OFFICE MANAGER FROM: DR. ROBERT I. THOMPSON, PRESIDENT SUBJECT: PURSUING A COLLEGE DEGREE Dear Terry: As was discussed during your performance review last week, the condition was stated that you are to make arrangements to achieve a college degree. Our client base includes individuals with Masters as well as Doctorate Degrees. If your work with these clients is to be as effective as possible a degree is a necessity. There are a number of programs available to you which will enable you to pursue a college degree and still continue in your present position full time. There is night school classes at Marquette University, and I understand that Alverno College is putting together a weekend college program that should be starting this fall. We are also willing to participate in a tuition reimbursement program. We are pleased with your performance within our firm, however, in order for you to continue your employment it will be necessary for you to attain a college degree. Therefore, I sincerely *206 urge you to look into the above mentioned programs. On August 26, 1977, Malek entered a bachelor of science degree program in management and communications at Alverno College (hereinafter sometimes referred to as "Alverno"). Alverno describes itself in the Alverno Weekend College Bulletin for 1977-1978 (hereinafter sometimes referred to as "the Bulletin") as "a private college for women of all ages, [which] offers a liberal arts curriculum leading to Bachelor of Arts, Bachelor of Science, or Bachelor of Music degrees. The Alverno degree signifies not only a depth of academic knowledge but the development of abilities essential to applying that knowledge both professionally and personally." Both the management and the communications courses of study are described in the Bulletin as designed to prepare the student for an "entry level" position. Since this degree program is part of the "Weekend College" curriculum at Alverno, Malek was able to continue her full-time employment at Fidelity. Before her enrollment at Alverno College in 1977, Malek had not undertaken any formal program of post-secondary education. [3] Six other employees at Fidelity also do consulting work similar to that *207 performed by Malek. All six have college degrees. [4]
In 1977 Malek enrolled in the following courses at Alverno: Integrated Learning: Approaches and Strategies; Introduction to Management; and Accounting. [5] (These courses are hereinafter sometimes referred to as "the Courses".) Malek incurred and spent tuition, fee, and book expenses in the amount of $1,379 [6] *208 for attendance at Alverno College during 1977.Fidelity reimbursed Malek for a portion of her educational expenses, in the amount of $575, which petitioners included in income for 1977. In later semesters at Alverno, Malek took the Courses listed in table 1. Table 1 Semester
Course Title
Spring 1978
Perception of the Person
Probability/Statistics
Symbols & Society
Summer 1978
Small Group Behavior
Fall 1978
Person in the Environment
Communication Theory & Advertising
Practice
Theory & Strategy of Persuasion
Writing and Editing
Spring 1979
Bridging the Cultural Gap
Economic Environment of the
Organization
Layout & Graphics
Complex Organizations
Fall 1979
Issues in Arts/Humanities
Introduction to Computer Science
Marketing Principles & Management
"Experiential Lrg Sem-Ocel"
Theory/Research Mass Communications
Spring 1980
Issues in Arts/Humanities
"Exp Human Meaning at A/H"
Finance
Problem Solving in Public Relations
Problem Solving/Business-Industrial
Communications
Communications Technology
Summer 1980
Algebra
Trigonometry
Fall 1980
Business Law
Marketing & Sales
Decision-Making Methods
Calculus 1
Advertising Strategies Communications
Technology
Spring 1981
Issues in Arts/Humanities
Business Policy/Strategy
Business Simulation
Strategy/Advertising Speaking Skill
Strategies in Advertising
Trends in Science
*209 On May 17, 1981, Alverno awarded to Malek the bachelor of arts degree, with the major in "professional communications/management". * * * The Courses met Fidelity's express requirements imposed on Malek as a condition to her retention of her job. The Courses are part of a program of study pursued by Malek which led to qualifying her in a new trade or business. OPINION Petitioners assert, and respondent denies, that the Courses maintained or improved the skills required by Malek in her employment. Petitioners assert, and respndent does not deny, that the Courses met Fidelity's requirement imposed on Malek as a condition to Malek's retention of her employment relationship or status with Fidelity. Respondent asserts, and petitioners deny, that (1) the Courses were required in order to meet the minimum educational requirements for qualification in Malek's employment, and (2) the Courses were part of a program of study pursued by Malek which would lead to qualifying her in a new trade or business. Although we agree with petitioners that the Courses met Fidelity's express requirement for Malek's retention of her job with Fidelity, we also agree with respondent that the expenses are not *210 deductible because the Courses were part of a program of study pursued by Malek which would lead to qualifying her in a new trade or busiess. Section 162(a)[7] provides for the deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. As section 162(a) has been interpreted, educations expenses may constitute deductible trade or business expenses if the education for which the expenses are made (1) maintains or improves skills required in the taxpayer's employment or other trade or business, or (2) meets the express requirements of the taxpayer's employer (or of applicable law or regulations) imposed as a condition for the taxpayer to retain an established employment relationship. See, e.g. , section 1.162-5(a), Income Tax Regs.[8] The record is clear that the Courses met the express requirements that Fidelity imposed on Malek in order for her to retain her job. We conclude that petitioners have *211 surmounted the hurdle of paragraph (a) of section 1.162-5, Income Tax Regs., and so we do not have to determine whether the Courses maintained or improved Malek's skills in her employment with Fidelity. (On answering brief, respondent appears to concede this point, but nevertheless urges us to conclude that the Courses did not improve or maintain these skills.) However, even though education satisfies one or both of the requirements of paragraph *212 (a) of section 1.162-5, Income Tax Regs., the expenses therefor are nevertheless nondeductible if the education either enables the taxpayer to meet the minimum educational requirements for qualification in his or her employment or other trade or business, or qualifies the taxpayer for a new trade or business. Garwood v. Commissioner,62 T.C. 699 (1974); section 1.162-5(b), Income Tax Regs.[9] *213 *214 Petitioners do not contend that these requirements of the regulations are invalid; rather, they contend that the Courses satisfy these requirements. Under section 1.162-5(b)(3), Income Tax Regs., if a taxpayer is pursuing a course of educational study which will qualify him or her for a new trade or business, the expenditures are not deductible even though the studies are required by the employer, even though the taxpayer does not intend to enter the new field of endeavor ( Bodley v. Commissioner,56 T.C. 1357, 1360 (1971)) and even though the taxpayer's duties are not significantly different after the education from what they had been before the education ( Robinson v. Commissioner,78 T.C. 550, 556-558 (1982)). [10] *215 This Court has adopted a "commonsense approach" in determining whether an educational expenditure qualifies a taxpayer for a new trade or business. Reisinger v. Commissioner,71 T.C. 568, 574 (1979); Davis v. Commissioner,65 T.C. 1014, 1019 (1976); Glenn v. Commissioner,62 T.C. 270, 275 (1974). "If the education qualifies the taxpayer to perform significantly different tasks and activites than he or she could perform prior to the education, then the education qualifies him or her for a new trade or business." Browne v. Commissioner,73 T.C. 723, 726 (1980); Diaz v. Commissioner,70 T.C. 1067, 1074 (1978), affd. without published opinion 607 F.2d 995 (CA2 1979); Glenn v. Commissioner,62 T.C. at 275. We have some difficulty in labelling Malek's trade or business. From her testimony, and in line with her terminology, it appears that she functioned as an office manager, a management consultant, *216 and an outplacement consultant. The parties stipulated to petitioners' exhibit 7, an extract from Occupational Outlook for College Graduates, a publication of the Bureau of Labor Statistics. A cursory examination of the entire publication reveals that Malek's bachelor of science degree, a liberal arts program with the major in "professional communications/management", would lead to qualifying her in many trades or businesses, among them the following: advertising workers, bank officers, college student personnel workers, credit managers, marketing research workers, purchasing agents, insurance claim representatives, and insurance underwriters, as well as a veriety of counselling occupations. As these trades or businesses are described in the publication, they involve significantly different tasks and activities than Malek performed in her employment with Fidelity. We conclude, and we have found, that the Courses are part of a program of study pursued by Malek which led to qualifying her in a new trade or business. Indeed, it may be all but impossible for a taxpayer to carry his or her burden of proving ( Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice & Procedure) *217 that a bachelor of arts degree program, or a liberal arts bachelor of science degree program, does not qualify the taxpayer in a new trade or business. In Toner v. Commissioner,623 F.2d 315 (CA3 1980), revg. 71 T.C. 772 (1979), deductions were allowed for the taxpayer's expenses in obtaining a bachelor's degree with a major in education. The taxpayer was a parochial school teacher; a bachelor's degree was not required for her then present employment, but was required for employment as a public school teacher. In dealing with the question as to whether the bachelor's degree would qualify the taxpayer for a new trade or business, the Court of Appeals relied on the language of section 1.162-5(b)(3)(i), Income Tax Regs., that "'all teaching and related duties shall be considered to involve the same general type of work.'" 623 F.2d at 320. Malek is not a teacher and so, of course, does not claim the benefit of the special rule for teachers that was decisive in Toner. We conclude that Toner is distinguishable. Apart from Toner, petitoners have not directed us to (and we have not found) any court opinion in which deductions were allowed under section 1.162-5(b)(3), Income Tax Regs., [11] *218 for the cost of obtaining the taxpayer's initial bachelor of arts degree or a liberal arts bechelor of science degree. [12] *219 We hold for respondent. [13]
* *220 * * In disallowing the claimed deduction, we must emphasize that this is not a judgment that Malek's actions were in any way improper or unjustified. Malek is one of millions who attended college, and is one of an elite who overcame substantial obstacles to do so and did well in doing so. Our holding for respondent is merely a holding that, like her fellow bachelor's degree candidates, she is not entitled to deduct the cost of this wise choice. See, e.g., Welch v. Helvering,290 U.S. at 115-116; Carroll v. Commissioner,418 F.2d 91 (CA7 1969), affg. 51 T.C. 213, 216 (1968). Decision will be entered for respondent.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 195j as in effect for the year in issue.↩
2. Fidelity does business under the name "R.I.Thompson & Associates."↩
3. The Bulletin states that "[w]eekend students with little or no post-secondary educational experience are required to take the full liberal arts program in addition to their major area of concentration and support area." ↩
4. Two employees have college degrees in business, two in psychology, and two in education.↩
5. Integrated Learning is part of the "core" curriculum at Alverno and is required of all students, regardless of the degree being pursued. The courses in Accounting and Introduction to Management are both listed in the Alverno College Bulletin as part of the "Management" degree program. ↩
6. So the parties agreed at trial. Because of an arithmetic error on their 1977 tax return, petitioners deducted only $1,279. We note that the sum of the expense categories listed on petitioners' tax return is $1,375.79.
7. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *↩
8. Sec. 1-162-5. Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.↩
9. Section 1.162-5(b), Income Tax Regs., provides in relevant part as follows: Sec. 1.162-5. Expenses for education. * * * (b) Nondeductible educational expenditures-- (1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or busienss), he shall be treated as continuing to meet those requirements even though they are changed. * * * (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. * * *
10. The education expense regulation here relevant was promulgated in 1967. It replaced a regulation that had been promulgated in 1958. The "old" (1958) regulation embodied a subjective "primary purpose" test. The "new" (1967) regulation replaces this with an objective test, in particular the qualification-for-new-trade-or-business test, embodied in section 1.162-5(b)(3) (n. 9, supra). Taubman v. Commissioner,60 T.C. 814, 817-819↩ (1973).
11. In Glasgow v. Commissioner,T.C. Memo. 1972-77, this Court allowed an ordained minister to deduct the expenses involved in gaining an undergraduate degree. The opinion notes that, as a general proposition, the costs of an undergraduate college education are not deductible, but that an exception was warranted under the circumstances involved in the case. The case was decided under the "old" (1958) regulations. (See n. 10, supra.↩) These earlier regulations were subjective and stressed the "primary purpose" for a taxpayer's educational expenditures. An educational expenditure which qualified a taxpayer for a new trade or business would not be disallowed as an ordinary and necessary business expense deduction unless the education was undertaken primarily for the purpose of obtaining a new position.
12. On brief, Malek relies heavily on two Memorandum Opinions of this Court: Smith v. Commissioner,T.C. Memo. 1981-149, and Blair v. Commissioner,T.C. Memo. 1980-488. These cases are factually distinguishable from the instant case in that the petitioners in the cited cases were not attempting to deduct educational expenditures that were part of a bachelor's degree program.
13. As a result of our conclusion as to qualification for a new trade or business, we do not decide whether the Courses were required in order to meet the minimum educational requirements of Malek's employment ( sec. 1.162-5(b)(2), Income Tax Regs.). On the one hand, we note that (1) all six of Malek's coemployees had bachelor's degrees and (2) Malek's own exhibit showed that the degree she applied for, and was awarded, was ordinarily required for entry-level employment in the field. On the other hand, we note that the last sentence of section 1.162-5(b)(2)(i)↩ provides that "Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed." Malek testified, and we have found, that Malek had been performing her duties with little or no change from early 1974, almost three years before Fidelity required her to obtain a bachelors degree.