T.C. Summary Opinion 2009-182


UNITED STATES TAX COURT


LORI A. SINGLETON-CLARKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 27975-07S.                Filed December 2, 2009.


Lori A. Singleton-Clarke, pro se.

<u>Brian S. Jones</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for

the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a Federal income tax deficiency of $2,126 for 2005. After concessions, the sole remaining issue for decision is whether petitioner is entitled to deduct $14,787 in education expenses she paid in 2005 in connection with pursuing a master of business administration degree with a specialization in health care management (MBA/HCM).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Maryland when she filed her petition.

## I. Petitioner's Job History

Petitioner earned a bachelor of science degree in nursing (BSN) from New York University in 1984. Petitioner became a registered nurse (RN) and for the next 24 years worked in various capacities for a number of hospitals, medical centers, and long-term care facilities.

From 1984 to 1993 she worked initially as an acute bedside clinical nurse and later as a team leader supervising nurses providing acute bedside care. From 1993 to 2004 she held various nursing management positions of increasing responsibility, eventually serving as a director of nursing for a 150-bed

subacute long-term care facility, responsible for "24/7" management of 110 nurses plus technicians. From 2004 to 2008 petitioner worked sequentially at three different hospitals. Though her titles were different, her tasks, activities, and responsibilities were nearly identical, concentrating in a nonsupervisory capacity as a quality control coordinator.

Overall in her 24 years of work, petitioner has earned six significant awards, including three citations of merit from the Governor of Maryland. The three jobs from 2004 to 2008 were a step down in pay and in status and a purposeful decrease in responsibilities because petitioner wanted more time to focus on some personal matters. However, because the three jobs and their associated hiring requirements are central considerations in this case, they are detailed below.

A. <u>Civista Medical Center</u>

From 2004 to 2007 petitioner worked for Civista Medical Center (Civista), a 108-bed acute care community-based hospital in Maryland. Her job title was quality improvement coordinator and her responsibilities were to coordinate the quality improvement and risk management activities for the hospital. In this role, petitioner developed and analyzed quality and risk management reports, and she investigated complaints from and implemented improvements for patients, visitors, nurses, and doctors. She reported to the director of quality management. To

qualify for the job, the minimum education and experience requirements were "a Bachelor of Science degree in Nursing or equivalent education and experience.  One year experience in Quality Assurance, Risk Management, or Nursing Management preferred."  The position also required candidates to be "currently licensed as a RN in the State of Maryland."

Civista underwent a change in leadership, causing petitioner to switch to a new employer, Children's National Medical Center (Children's) in Washington, D.C., with a new title, but continuing essentially the same duties she performed at Civista.

B.  Children's National Medical Center

From 2007 to 2008 petitioner worked for Children's.  Her job title was center outcomes coordinator.  Her responsibilities were similar to the ones she had at Civista, developing a systemic approach to measuring and improving outcomes for patients, physicians, and employees.  The job requirements stated: "Bachelor's in Nursing or health related field required; Master's in Public Health preferred.  Two years quality improvement experience in a hospital setting and three years clinical experience preferred."

Petitioner's 2-hour commute to Children's proved to be onerous.  She made a lateral switch to St. Mary's Hospital (St. Mary's) to shorten the commute, resulting in another decrease in pay.

C.  St. Mary's Hospital

Petitioner began working at St. Mary's on September 8, 2008. Her title is performance management coordinator, and again similar to her responsibilities at Civista and Children's, her duties focus on coordinating, planning, and implementing the Hospital's performance improvement activities.  She reports to the director of quality control, who in turn reports to the vice president for quality.

The job qualifications of a performance management coordinator at St. Mary's are, in pertinent part:

> Registered Nurse Licensure required.  B.S. Health Care Administration required--Masters preferred. Registration in the State of Maryland (MAHQ) and National (NAHQ) Associations.  Previous experience in clinical health care including direct experience in Performance Improvement.  Experience with Risk Management and/or utilization review desired.

II.  The MBA/HCM

Petitioner began taking courses at the University of Phoenix in March 2005, graduating in April 2008 with an MBA/HCM.  She chose the University of Phoenix because the institution allowed students to complete the program via online courses, which was a major priority for petitioner.

Petitioner enrolled in the program to become more effective in her then-present duties.  She realized that nursing had evolved greatly in the 24 years since she earned her bachelor's degree, and she felt disadvantaged working with highly educated

doctors. Petitioner believed that although an MBA was not required for her job, the degree would give her greater credibility and the courses would make her more effective in her present and future role as a quality control coordinator.

The University of Phoenix MBA/HCM provides students "with the business management skills needed to manage successfully in today's health care delivery systems." The program features courses in "health care organizations, health care finance, quality and database management, health care infrastructure, and health care strategic management." Petitioner did well in her course work, graduating with a 3.57 grade point average.

Petitioner paid the entire cost of the program. None of her employers had a reimbursement policy for the MBA/HCM program.

III. The Notice of Deficiency

Petitioner timely filed her 2005 Federal income tax return using the services of a paid preparer. Respondent examined the return and in a notice of deficiency determined a deficiency in Federal income tax of $2,126. Respondent disallowed $1,580 of petitioner's $1,620 in noncash and cash charitable contributions, which petitioner conceded. Respondent also disallowed all of petitioner's miscellaneous itemized deductions, consisting of $180 in tax return preparation fees and $14,787 in unreimbursed employee business expenses for education expenses. Respondent

later conceded the tax return preparation fees, leaving the education expenses as the sole point of contention.

## Discussion

### I.  Burden of Proof

In general, the Court presumes that the Commissioner's determination set forth in a notice of deficiency is correct, and the taxpayer bears the burden of showing that the determination is in error.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under section 7491(a) the burden may shift to the Commissioner regarding factual matters if the taxpayer produces credible evidence and meets the other requirements of the section.  Petitioner did not argue that she satisfied the elements for a burden shift, but even if she did, the consideration of a burden is moot here because no factual issues are in dispute.  In other words, section 7491(a) is inapplicable because we decide this case entirely by application of the law to undisputed facts.

### II.  Deductions in General

Deductions are a matter of legislative grace, and taxpayers must satisfy the statutory requirements for claiming the deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers may deduct ordinary and necessary expenses that they pay in connection with operating a trade or business.

Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004).
Generally, the performance of services as an employee constitutes
a trade or business. Primuth v. Commissioner, 54 T.C. 374, 377
(1970). To be ordinary the expense must be of a common or
frequent occurrence in the type of business involved. Deputy v.
du Pont, 308 U.S. 488, 495 (1940). To be necessary an expense
must be appropriate and helpful to the taxpayer's business.
Welch v. Helvering, supra at 113. The expenditure must be
"directly connected with or pertaining to the taxpayer's trade or
business". Sec. 1.162-1(a), Income Tax Regs.

For such expenses to be deductible, the taxpayer must not
have the right to obtain reimbursement from his employer. See
Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), affg.
T.C. Memo. 1984-533. Section 262(a) disallows deductions for
personal, living, or family expenses.

Section 1.162-5, Income Tax Regs., Expenses for Education
(the regulation), interpreting section 162, Trade or Business
Expenses, governs whether a taxpayer may deduct education
expenses. The validity of this longstanding regulation is not in
dispute. The regulation provides that a taxpayer may deduct
education expenses as ordinary and necessary business expenses

if the education--

(1) Maintains or improves skills required by the
individual in his employment or other trade or
business, or

(2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.

Sec. 1.162-5(a)(1) and (2), Income Tax Regs.

Conversely, the regulation provides that if the education qualifies the individual for a new trade or business, then the education expenses are not deductible because the education is a personal expense or constitutes an accumulation of personal capital. Sec. 1.162-5(b)(3), Income Tax Regs.

Whether the education qualifies the taxpayer for a new trade or business is an objective inquiry analyzing the tasks and activities the taxpayer was able to perform before the education in comparison to those the taxpayer was qualified to perform afterward. Glenn v. Commissioner, 62 T.C. 270, 275 (1974); Weiszmann v. Commissioner, 52 T.C. 1106, 1110 (1969), affd. per curiam 443 F.2d 29 (9th Cir. 1971). In other words, the relevant standard is whether the education objectively qualifies the taxpayer for a new trade or business. Robinson v. Commissioner, 78 T.C. 550, 554-556 (1982); Glenn v. Commissioner, supra. Accordingly, the taxpayer's subjective intent in undertaking the education is not relevant, and likewise it is not material whether the taxpayer does in fact become employed in a new trade or business. Burnstein v. Commissioner, 66 T.C. 492, 495 (1976); Bodley v. Commissioner, 56 T.C. 1357, 1360 (1971).

III.  Application of the Law to Petitioner's Factual Situation

A.  Petitioner's New Job at St. Mary's

Respondent contends that without receiving the MBA/HCM in April 2008 petitioner would not have obtained her final job, the one she started in September 2008 at St. Mary's, because the St. Mary's job description, in addition to requiring an RN license, which petitioner already possessed, required at least a bachelor of science in health care administration, which petitioner had not previously earned.

Though the titles of the jobs varied, petitioner's three jobs since 2004 were nearly identical, requiring serving as a quality control coordinator at acute care hospitals and medical centers.  We believe that St. Mary's would have gladly hired petitioner as a performance management coordinator even without the MBA/HCM.  All three quality control positions required an RN license or a bachelor's in nursing, with clinical or risk management experience; credentials which petitioner possessed. The first two employers, Civista and Children's, had hired petitioner without the MBA/HCM.  Further, petitioner was a multiple award winner, having received recognition three times from the Governor of Maryland and from three other prominent organizations.  Moreover, petitioner had worked her way up to serving as a director of nursing responsible for 110 nurses plus additional technicians, clearly indicating high competence.  All

three quality control positions, while important, were a step down in status and pay from her former duties. For all of these reasons, we find that the MBA/HCM may have been a helpful addition to her qualifications, but was not an essential prerequisite for petitioner to secure the position at St. Mary's.

B. Whether an MBA Qualifies Taxpayers for Any New Trade or Business

The final remaining inquiry then is whether as an objective matter the MBA/HCM qualifies petitioner for any new trade or business, not just the particular job at St. Mary's that she acquired. Respondent contends that the MBA/HCM does qualify petitioner for a new trade or business, because in respondent's words, under the regulation "the tasks and activities she was qualified for before she obtained the degree are different than those which she is qualified to perform afterwards". We disagree.

An MBA degree is different from a degree that serves as foundational qualification to attain a professional license. For instance, this Court had denied deductions for law school expenses, because a law degree qualifies a taxpayer for the new trade or business of being a lawyer. See, e.g., Bodley v. Commissioner, supra; Weiler v. Commissioner, 54 T.C. 398, 401-402 (1970).

An MBA is a more general course of study that does not lead to a professional license or certification. Allemeier v.

Commissioner, T.C. Memo. 2005-207.  This Court has had differing outcomes when deciding whether a taxpayer may deduct education expenses related to pursing an MBA, depending on the facts and circumstances of each case.  The decisive factor generally is whether the taxpayer was already established in their trade or business.

For example, in the following two cases we held that the taxpayers were not entitled to deduct their MBA expenses.  In Link v. Commissioner, 90 T.C. 460, 463-464 (1988), affd. without published opinion 869 F.2d 1491 (6th Cir. 1989), the taxpayer had not established a trade or business.  After graduating with an undergraduate degree in May 1981, he worked during the summer but then promptly commenced his MBA coursework in September 1981.  Similarly, in Schneider v. Commissioner, T.C. Memo. 1983-753, the taxpayer, after graduating from West Point, served honorably in the Army for 5 years before resigning from active duty with the rank of captain and immediately starting in Harvard's MBA program.  Although the taxpayer established outstanding management experience in the Army, he had never worked in business, and therefore we decided his "work as an Army officer is a different trade or business from the consulting business for which his course of study at Harvard prepared him."  Id.

In contrast, in Sherman v. Commissioner, T.C. Memo. 1977-301, we held that another former Army officer was entitled to

deduct the expense of his Harvard MBA.  The difference is that the former officer in <u>Sherman</u> had worked for 2 years as a civilian employee after resigning his Army commission and before matriculating to Harvard.  Moreover, the duties of the taxpayer in <u>Sherman</u> during his 2 years of civilian work included formulating and monitoring management plans and reviewing and evaluating policies involving purchasing, inventory control, and personnel management.  These were the types of subject matters taught in the MBA program.

Two other cases also illustrate situations where an MBA did not lead to a new trade or business.  In <u>Allemeier v. Commissioner</u>, <u>supra</u>, before beginning an MBA program, the taxpayer had already worked 3 years for a pediatric orthodontic laboratory, during which time his responsibilities expanded to include designing marketing strategies for additional products, organizing informational seminars, and traveling extensively to conventions to lead seminars.  This Court held that the taxpayer's trade or business did not significantly change because the MBA merely improved preexisting skills for the same general duties he was already performing before enrolling in the MBA program.

Likewise, in <u>Blair v. Commissioner</u>, T.C. Memo. 1980-488, the taxpayer initially completed 1 year of undergraduate coursework. She then spent the next 13 years concentrating on raising a

family while also working for small companies, gaining the equivalent of 5-1/2 years' experience in mostly clerical and secretarial duties.  She also acquired some familiarity with bookkeeping, payroll, and personnel matters.  Over the next 3 years the taxpayer earned a bachelor of arts degree in English, and then she was hired by a large international corporation, where she worked for a little more than 1 year as a personnel representative before commencing her MBA.  The corporation promoted the taxpayer to personnel manager within 11 months after starting the 2-year MBA program.  This Court held that "under any realistic interpretation" petitioner's new duties as a personnel manager did not constitute a new trade or business because she was already engaged in the same type of work, with the only major difference being that as a personnel manager she made decisions while as a personnel representative she made only recommendations.  Id.  Neither the difference in duties nor the new title was enough to constitute a new trade or business.

Analyzing petitioner's situation, her facts and circumstances far more closely resemble the cases that allowed a deduction for pursuing an MBA.  Petitioner is unlike the student in Link v. Commissioner, supra, who went straight from his undergraduate degree into an MBA program, and the officer in Schneider v. Commissioner, supra, who went straight from the Army into an MBA program.  Petitioner is considerably closer in

circumstance to the taxpayers in <u>Sherman v. Commissioner</u>, <u>supra</u>, <u>Allemeier v. Commissioner</u>, T.C. Memo. 2005-207, and <u>Blair v. Commissioner</u>, <u>supra</u>, who had 2 years, 3 years, and 1 year, respectively, of experience performing tasks and activities in their chosen professions before beginning their MBA programs. The facts in favor of petitioner are even stronger than those in the three cases above where the taxpayers prevailed.  Petitioner worked for 1 year as a quality control coordinator and had more than 20 years of directly related work experience, gaining vast clinical and managerial knowledge in acute and subacute health care settings, before beginning the University of Phoenix MBA/HCM program.

In summary, the MBA/HCM may have improved petitioner's preexisting skill set, but objectively, she was already performing the tasks and activities of her trade or business before commencing the MBA.  For all of the above reasons, we find that petitioner's MBA/HCM did not qualify her for a new trade or business, and we hold, therefore that petitioner may deduct her education expenses for 2005.

To reflect our disposition of the issues,

<u>Decision will be entered under Rule 155</u>.
