ABDELHAMID AND SOMAYAH HAMDI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamdi v. Commissioner
Docket Nos. 16171-89, 19896-89
United States Tax Court
T.C. Memo 1993-38; 1993 Tax Ct. Memo LEXIS 42; 65 T.C.M. (CCH) 1835; February 2, 1993, Filed *42 Decisions will be entered under Rule 155. Abdelhamid Hamdi, pro se. For Respondent: Dennis G. Driscoll. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in, and additions to, petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2) [2]
Sec. 6661
1985
$ 16,814
$   840.70
50% of interest
$ 4,203.50
on $ 16,814
1986
31,597
1,579.85
50% of interest
7,899.25
on $ 31,597
All section references are to the Internal Revenue Code in effect for the years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The issues before the Court are: 1. Whether petitioners are entitled to Schedule C losses of $ 59,086 for the taxable year 1985 and $ 76,440 for the taxable year 1986. We hold that they are not. 2. Whether petitioners *43 are entitled to employee business expenses of $ 2,524 for the taxable year 1985 and $ 11,250 for the taxable year 1986. We hold that petitioners are entitled to certain Schedule A employee business expenses in various amounts as conceded by respondent and found by the Court. 3. Whether petitioners are entitled to deduct $ 3,594 for State and local income taxes paid during the taxable year 1985. We hold that they are. 4. Whether petitioners are entitled to gross medical expenses of $ 16,250 for the taxable year 1985. We hold that they are entitled to only $ 1,439 of that amount. 5. Whether petitioners are entitled to a deduction of $ 298 for noncash charitable contributions for the taxable year 1985. We hold that they are. 6. Whether petitioners are entitled to a theft loss of $ 4,500 for the taxable year 1985. We hold that they are not. 7. Whether petitioners are entitled to miscellaneous itemized deductions of $ 1,096 for the taxable year 1985. We hold that they are entitled to only $ 175 of that amount. 8. Whether petitioners are entitled to additional deductions for a married couple, sales taxes, and medical expenses as a result of other adjustments to adjusted *44 gross income. These are automatic adjustments to be determined in the Rule 155 computations. 9. Whether petitioners had additional income of $ 909 for State and local tax refunds apparently received during the taxable year 1985. We will allow the parties, in their Rule 155 computations, to clarify their agreement on this item. 10. Whether petitioners are liable for additions to tax for negligence under section 6653(a) for the taxable years 1985 and 1986. We hold that they are liable. 11. Whether petitioners are liable for additions to tax for substantial understatements of income tax under section 6661 for the taxable years 1985 and 1986. We hold that they are liable. FINDINGS OF FACT A few facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. [1]
*45 Petitioners Abdelhamid and Somayah Hamdi (petitioners or Mr. and Mrs. Hamdi) were husband and wife and, at the time the petitions were filed in this case, resided at 28490 Mound Road, No. 1-B, Warren, Michigan 48093 (the Mound Road residence). The Mound Road residence was two stories and contained eight rooms, including the kitchen and bathroom. Petitioners rented the Mound Road residence for approximately $ 250 a month, plus utilities and telephone. Petitioners are citizens of Egypt. Petitioners have three children whose ages during the relevant period before the Court were approximately 5 years (Fandah), 6 years (Mahamad), and 8 years (Sakenah). During 1983 and 1984, Mrs. Hamdi was a teaching assistant at Northeastern University where she was working on her master's degree in electrical engineering. She and the three children lived in the Boston, Massachusetts, area those years, while Mr. Hamdi lived at the Mound Road residence in Warren, Michigan. The five of them lived in the Mound Road residence during 1985 and 1986, the years before the Court. Mr. Hamdi is a mechanical engineer. He has five degrees, including a Doctorate of Philosophy (PhD) in mechanical engineering. *46 Mrs. Hamdi is an electrical engineer, with a master's degree from Northeastern University. During 1985 and 1986 both petitioners worked full-time (each a 40-hour week) as engineers at the United States Army Tank Automotive Command in Warren, Michigan (TACOM or the Warren Tank plant). Mr. Hamdi received W-2 wage income from TACOM in the amount of $ 37,018.40 in 1985 and $ 36,278.40 in 1986. Mrs. Hamdi received W-2 wage income from TACOM in the amount of $ 22,280 in 1985 and $ 26,826.40 in 1986. In April of 1985, Mr. Hamdi and Mrs. Beulah L. Sattley incorporated HER Vocational Training Center, which was intended to operate as a nonprofit school. A Form 1023, Application for Recognition of Exemption (under section 501(c)(3)), was filed on June 25, 1985, listing Mr. Hamdi as president and technical director and Mrs. Sattley as vice president, admission and financing. Mr. Hamdi's address was listed as 11864 Elmdale, Detroit, Michigan (the Elmdale property). The Elmdale property had been acquired by Mr. Hamdi in 1984 and may have been acquired in the name of his then 5-year-old son, Mahamad Hamdi. The Elmdale property was intended to be used as the location for the school, HER *47 Vocational Training Center. Information furnished on August 28, 1985, to supplement the application for tax exemption recited that the Elmdale property had been contributed to HER Vocational Training Center, 50 percent by Mr. Hamdi and 50 percent by Mr. M.A. Hamdi (presumably his then 6-year-old son). On November 29, 1985, respondent approved the application for recognition of exemption under section 501(c)(3) for HER Vocational Training Center. That school never went into operation. [2] Most of the alleged expenses claimed on Mr. Hamdi's Schedule C related to this school that never went into operation. Respondent later revoked the exemption retroactive to the date of approval. At the time of the trial of this case, Mr. Hamdi was considering whether or not to appeal that revocation. *48 In late 1985, Mr. Hamdi began performing engineering services through ACRO Service Corporation (ACRO) for the Buick-Oldsmobile-Cadillac (BOC) Flint Engineering Center, General Motors Corporation (GMC) in Flint, Michigan. The BOC Flint Engineering Center is some distance from Detroit, Michigan, and an automobile trip from Detroit to Flint and return takes from 2 to 3 hours. In 1985 ACRO paid Mr. Hamdi W-2 wage income in the amount of $ 9,943.20. On February 29, 1986, Mr. Hamdi entered into an employment contract with ACRO to perform services for the BOC Flint Engineering Center. The contract provided for different hourly rates for straight time, overtime, and Sunday and holiday time. ACRO agreed to pay a per diem travel allowance of $ 5.50 per hour of straight-time work, with a maximum of $ 44 per day per diem. Mr. Hamdi was to recruit and retain any professional or nonprofessional staff he needed for his work for BOC Flint Engineering Center. Mr. Hamdi was not provided space for his work or for any staff, but was expected to use his office and school library in Detroit and his office at home to perform his services for BOC Flint Engineering Center. It is not clear what office *49 or school in Detroit the ACRO contract referred to, but apparently it was the nonoperational HER Vocational Training Center in the Elmdale property. [3] Mr. Hamdi did have an office in the Mound Road residence, as will be discussed later. ACRO paid Mr. Hamdi W-2 wage income of $ 56,562 in 1986. ACRO also paid Mr. Hamdi per diem of $ 9,592 in 1986, which included automobile expenses for travel to the BOC Flint Engineering Center in Flint, Michigan. Although he did not work the regularly scheduled hours shown on the time sheets he filled out and submitted to ACRO, he did work substantially full-time (40-hour week) on BOC Flint Engineering Center work in 1986. Most of this work was performed in the evenings and during the weekends. Also in both 1985 and 1986, Mr. Hamdi taught a few engineering classes *50 on a part-time basis at Wayne State University in Detroit, Michigan. In 1985 he received W-2 wage income of $ 8,900 from Wayne State University and in 1986 $ 4,203. 1985 Tax Return
For 1985 petitioners reported W-2 wage income from their various jobs in the total amount of $ 78,142. However, they claimed net Schedule C losses totaling $ 59,086 and employee business expenses totaling $ 2,524 that are still in dispute. With various other deductions and exemptions, they reported taxable income of only $ 7,258 and tax of $ 426. For 1985 petitioners did not file a Schedule A or claim any Schedule A itemized deductions. Respondent on brief has now conceded, and the Court finds, that petitioners are entitled to the following Schedule A itemized deductions for 1985: State & local income taxes
$ 3,594
Noncash charitable contributions
298
Medical expenses
1,439
Miscellaneous (tax return
preparation fee)
175
Petitioners have not proved that they incurred or paid the following additional claimed Schedule A itemized deductions for 1985: Medical expenses in Egypt
$ 14,811
Theft loss
4,500
Petitioners established that in 1985 they paid $ 900 to Northeastern *51 University and $ 21 to Oakland University. [4] The record does not establish the purpose of the $ 21 payment to Oakland University. The $ 900 paid to Northeastern University represented tuition payments for Mrs. Hamdi for the 1983 and 1984 school years while she was obtaining her master's degree in electrical engineering. Both parties have agreed to the following statement: Petitioners had $ 909.00 in income from state and local tax refunds for the taxable year 1985. It is not clear whether the State and local tax refunds were received by petitioners in 1985 or whether the State and local tax refunds were refunds of taxes paid in 1985. The parties can clarify this in their Rule 155 computations. [5]
*52 Mr. Hamdi filed a Schedule C for 1985 in the name of HER Vocational Training Center located at 11864 Elmdale, Detroit, Michigan. See supra note 2. That Schedule C reported gross receipts of $ 17,000. That amount was made up of $ 12,000 allegedly donated to HER Vocational Training Center by his three young children ($ 4,000 per child) as charitable contributions, plus a charitable contribution by Mrs. Sattley. The record does not establish that these amounts were in fact contributed. From the $ 17,000 alleged gross receipts, petitioners deducted $ 42,379 of alleged expenses and claimed a net loss of ($ 25,379). Petitioners have failed to establish that most of these expenses were actually incurred or paid. The $ 3,022 rent on business property was for amounts allegedly paid to petitioners' 6-year-old son for rent of "his building", the same Elmdale property that had allegedly been contributed by him and his father to HER Vocational Training Center. The $ 9,000 for casual labor was for amounts allegedly paid to his three children; the $ 6,363 for professional services was for an amount allegedly paid to his wife for engineering services. These alleged payments to family *53 members will be discussed further below. Most of the alleged expenses were in connection with the school that had not gone into operation, and they would not be deductible even if the alleged expenses had been substantiated. To the extent these alleged expenses were not related to the school, they were related either to Mr. Hamdi's teaching activities at Wayne State University or his work for BOC Flint Engineering Center. Petitioners have not established that the claimed expenses were incurred or paid, that they related to any trade or business carried on by Mr. Hamdi, or that they were reasonable in amount. Petitioners have failed to prove that the few items that were in fact paid were deductible business expenses. For example, the $ 30 listed as a commission was the State of Michigan corporate fee for incorporating HER Vocational Training Center, which would be a nondeductible start-up expense of a school that never went into operation. The bank charges were charges for petitioners' personal bank accounts; they never opened any bank accounts for any of their alleged businesses. For 1985 Mr. Hamdi filed a second Schedule C under his own name, again with the address of the *54 Elmdale property. He reported gross receipts of $ 2,080. Those amounts came from the Engineering Society of Detroit and the Cadillac Career Enterprises. The record does not explain the nature of the services for which Mr. Hamdi was paid by those two organizations. However, on that same Schedule C, Mr. Hamdi claimed business deductions totaling $ 39,810 and a net loss of ($ 37,730) for 1985. Again rental payments were claimed for the Elmdale property for $ 3,020 allegedly paid to petitioners' son, Mahamad. Also substantial amounts for automobile expenses ($ 4,070), professional services ($ 13,501 allegedly paid to his wife), and casual labor costs ($ 9,000 allegedly paid to his three children) were deducted. Petitioners have not established that these alleged expenses were in fact incurred or paid, that they were paid for deductible business purposes, or that the amounts were reasonable. For 1985 Mrs. Hamdi also filed a Schedule C under the name of Omar (apparently her maiden name) Engineering, listing the Mound Road residence as the place of business. Omar Engineering Company is not a corporation but is a name Mrs. Hamdi used to try to solicit engineering consulting work. *55 Mrs. Hamdi reported gross receipts of $ 18,000, which were amounts Mr. Hamdi allegedly paid her for engineering services she allegedly performed for him. Mrs. Hamdi did not appear or testify, and the Court did not believe Mr. Hamdi's testimony about these alleged services and payments. On Mrs. Hamdi's Schedule C, deductions of $ 13,977 were claimed and a net profit of $ 4,023 reported. The largest deductions were for automobile expenses ($ 4,993), rent on business property ($ 1,404 of the annual rental of the Mound Road residence), utilities and telephone ($ 1,054 representing 100 percent of the telephone and 50 percent of the utilities expenses of the Mound Road residence), and travel and entertainment expenses ($ 2,257). There is no competent or probative evidence substantiating either the automobile expenses or the travel and entertainment expenses. Alleged Payments to Children
For both 1985 and 1986, petitioners deducted rental payments allegedly made to their 6-year-old son, Mahamad, in the total amount of approximately $ 6,000 each year. Mr. Hamdi also deducted on his Schedules C payments allegedly made to the children for services rendered in his alleged businesses, *56 in the total amount of $ 18,000 ($ 6,000 per child) each year. Mr. Hamdi presented employment contracts with each of the children which called for a 40-hour workweek for 50 weeks a year at a wage of $ 3.00 per hour, for a total of $ 6,000 per child per year. Mr. Hamdi insisted that these children (ages 5, 6, and 8) worked with Mrs. Hamdi after school every weekday at the Elmdale property from 4:00 to 10:00 p.m. and over the weekends. While the children may well have been with their mother wherever she happened to be (at the Mound Road residence where her Schedule C said Omar Engineering was located, at the Elmdale property where Mr. Hamdi insisted she was performing electrical engineering services on his ACRO work, or traveling between various sites as her travel logs claim), the record does not establish that these children rendered any services in their parents' work, that they were paid for any such alleged services, or that these alleged services had a reasonable value of $ 6,000 per child or any other amount. In short, the Court simply did not believe Mr. Hamdi's testimony. Travel and Entertainment; Automobile Expenses
Also, in addition to other deductions, petitioners *57 claimed substantial amounts of travel and entertainment expenses. Neither the fact nor the amount of such expenses was substantiated. Petitioners also claimed an incredible amount of business mileage, totaling some 60,000 to 70,000 miles each year. Both petitioners claimed mileage from their Mound Road residence to the Warren Tank Plant, their principal place of employment. Each allegedly drove a separate car and claimed separate mileage, sometimes both claiming trips from Detroit to Flint and return (each round-trip being a 2- to 3-hour drive) the same day in separate cars. On some days Mr. Hamdi claimed two round-trips to Flint (some 4 to 6 hours of alleged driving time). Mr. Hamdi claimed mileage from one building to another at the Warren Tank Plant, claimed mileage from the Warren Tank Plant to Wayne State University, claimed mileage from one building to another at Wayne State University, claimed mileage from the Warren Tank Plant to Roseville, Michigan, where Mrs. Sattley lived, claimed mileage from the Warren Tank Plant to the Mound Road residence over lunchtime where he allegedly made and received business telephone calls, claimed mileage from the Warren Tank Plant to *58 the Elmdale property in Detroit, Michigan, and to the BOC Flint Engineering Center in Flint, Michigan. For 1985 petitioners claimed employee business expenses on Form 2106 for 14,085 business miles for Mr. Hamdi and 1,600 business miles for Mrs. Hamdi for a total claim of $ 3,084. Respondent disallowed $ 2,524 of that amount. In addition petitioners claimed automobile expenses on their various Schedules C totaling $ 11,913, all of which was disallowed. For 1986 petitioners did not claim any automobile expenses on their Schedules C but claimed $ 11,250 for business mileage as employee business expenses on Form 2106. Mr. Hamdi claimed 40,000 business miles and Mrs. Hamdi a somewhat lower number. The entire amount of $ 11,250 was disallowed. Petitioners have not substantiated any of their alleged business mileage, and the Court is satisfied that their mileage claims are excessive and grossly inflated. Since respondent allowed a portion of the employee business mileage for 1985 and since ACRO paid Mr. Hamdi a per diem amount for travel, the Court concludes that any unreimbursed business mileage is nominal. In any event there is no basis in the record on which the Court could *59 determine any additional amount of deductible business mileage or automobile expense for either year. The Court accords no weight whatsoever to Mr. Hamdi's testimony or to the alleged travel logs he prepared for himself and for Mrs. Hamdi. The Court regards those logs as sheer fabrications unworthy of belief. Hope to Establish Engineering Consulting Business
Both petitioners hoped to establish some type of engineering consulting business, but the record does not establish that any such business had been started or was in operation in 1985 or 1986. The HER Vocational Training Center, the school that never went into operation, was one such effort. See supra notes 2 and 3. The "HER" in that title apparently referred to Hamdi Engineering and Research. Mr. Hamdi had a brochure printed, entitled "Hamdi Engineering and Research". Similarly, Mrs. Hamdi had a brochure printed, entitled "Omar Engineering Co.". Petitioners used these brochures in soliciting engineering consulting work. In 1986, petitioners incorporated Cadillac Engineering & Research, Inc. (CER), a service company, but that corporation was not in operation during the years before the Court. Office in *60 the Home
During the years before the Court, Mr. Hamdi did have an office at the Mound Road residence where he performed services for ACRO and in connection with his teaching services for Wayne State University. The record does not establish that Mrs. Hamdi had any income-producing activities other than her full-time employment at TACOM. In 1985 petitioners claimed 100 percent of the telephone expense at their Mound Road residence as a business expense and in 1986 50 percent. They claimed 50 percent of their annual rent (the rent was approximately $ 250 per month) and 50 percent of their utilities as expenses of the office in the home each year. Respondent has conceded on brief, and the Court finds, that the Mound Road office was the principal place of business for Mr. Hamdi's work for ACRO and that Mr. Hamdi is entitled to one-eighth (one of the eight rooms) of the rent and utilities as deductible home office expense. The record does not establish that petitioners are entitled to any greater amount. Those amounts are as follows: 1985
1986
Rent
$ 351.00
$ 393.00
Utilities &
Telephone
150.31
145.00
$ 501.31
$ 538.00
Respondent also concedes on brief, *61 and the Court finds, that petitioners had deductible employee business expenses for dues and publications in the amounts of $ 293.55 for 1985 and $ 256 for 1986. 1986 Tax Return
In 1986 petitioners received $ 123,869.80 in W-2 wage income as follows: Mr. Hamdi
TACOM
$ 36,278.40
ACRO
56,562.00
Wayne State
University
4,203.00
Mrs. Hamdi
TACOM
26,826.40
Mr. Hamdi filed a Schedule C under the name of HER Vocational Training Center, at the Elmdale property address. The Schedule C reported no gross receipts, but deductions of $ 98,306 for a net loss of $ 98,306. Mr. Hamdi had no separate trade or business apart from his employment with TACOM, ACRO, and Wayne State University. Mr. Hamdi claimed commission expenses of $ 25,000, which represented amounts he allegedly paid to Mrs. Hamdi for electrical engineering services for his work for ACRO. The record does not establish that she rendered any such services or that Mr. Hamdi paid her $ 25,000 or any other amount for such services. Mr. Hamdi also deducted repairs of $ 12,098 allegedly performed on the Elmdale property that had allegedly been contributed to the nonprofit HER Vocational Training *62 Center, as discussed earlier. The nature and amount of any such repairs has not been established by any competent or probative evidence. Mr. Hamdi also deducted $ 7,564 as rental expense, $ 6,000 of which was allegedly paid to his son, Mahamad, for rent for the Elmdale property and $ 1,564 of which was a portion of petitioners' rental payments on their Mound Road residence. Mr. Hamdi also deducted $ 18,000 for casual labor, which represented $ 6,000 per child which was allegedly paid to his three children for services rendered. The record does not establish that the children rendered any services. [6] Mr. Hamdi also deducted travel and entertainment expenses of $ 16,721, which have not been substantiated. In 1986 Mr. Hamdi also claimed deductions for an office in Alexandria, Egypt, while he was allegedly on a business trip there. The record does not establish that any such expense was incurred or paid, that any such expense was a deductible business expense, or that any such expense was reasonable. *63 Mr. Hamdi's Schedule C for 1986 is essentially a work of fiction and a total sham, as is that of Mrs. Hamdi. Her Schedule C, for example, claims an office expense deduction of $ 2,500, but that was simply payments to the children's babysitter. Petitioners' suggestion, on brief, that this person was supervising the children in their performance of services to their parents is not only wholly without factual support in the record but is ludicrous on its face. OPINION The issues in this case are essentially factual in nature. Both petitioners are engineers, who worked full-time for the United States Army Tank Automotive Command (TACOM) in Warren, Michigan, both years. In addition, Mr. Hamdi rendered engineering services to the Buick-Oldsmobile-Cadillac (BOC) Flint Engineering Center, General Motors Corporation (GMC), in Flint, Michigan, and taught an occasional engineering course at Wayne State University in Detroit, Michigan, both years. There is no dispute as to the amounts of W-2 wage income earned by each petitioner from these jobs. The disputes arise out of petitioners' claimed employee business expenses for business mileage on Forms 2106 and out of the large deductions *64 claimed on various Schedules C that eliminated most of their taxable income both years. Petitioners bear the burden of proof to establish the existence of the various trades or businesses claimed on their Schedules C and to substantiate the business expenses claimed on those Schedules C and the business mileage claimed on their Forms 2106. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). They have failed to carry their burden. Schedule C and Employee Business Expense Deductions
Section 162(a) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including compensation for personal services actually rendered and rentals for business offices. Compensation is deductible only if it is (1) reasonable in amount, (2) based on services actually rendered, and (3) actually paid or incurred. Eller v. Commissioner, 77 T.C. 934, 962 (1981). Compensation that meets those requirements is deductible even if the employer is a spouse or parent and the employee the other spouse or a child. Eller v. Commissioner, supra; *65 Mitchell v. Commissioner, 27 B.T.A. 101, 104 (1932). However, when a familial relationship is involved, the Court closely scrutinizes the transaction to determine if there is a bona fide employer-employee relationship and whether or not payments were made for services actually performed for the business. Denman v. Commissioner, 48 T.C. 439, 450 (1967). [7] With transactions among family members, we must bear in mind that section 262 disallows any deduction for personal, living, or family expense. Also, we must remember that income is taxable to the person who earns it, and that devices to try to divert or assign that income to another person must be disregarded. Lucas v. Earl, 281 U.S. 111 (1930). These assignment of income principles may well be implicated in transactions between spouses or between parents and children. *66 In the instant case many of the claimed deductions were amounts Mr. Hamdi allegedly paid to Mrs. Hamdi for engineering services she allegedly performed for him ($ 18,000 in 1985 and $ 25,000 in 1986). Other claimed deductions were amounts Mr. Hamdi allegedly paid his three children (ages 5, 6, and 8) for services allegedly rendered to him ($ 6,000 per child or a total of $ 18,000 each year). Also claimed were amounts allegedly paid to his 6-year-old son, Mahamad, for rent for the Elmdale property. The factual record in this case is scant. [8] Most of the documents are self-serving, handwritten notes prepared by Mr. Hamdi himself for which there is no independent corroborating testimony or documentation. There are handwritten receipts allegedly signed by third parties none of whom appeared to authenticate or sponsor the documents. There are checks made out to cash or to persons who did not appear or testify at the trial. Most of these documents are neither self-explanatory nor self-proving. Mrs. Hamdi, a key player who is central to these alleged events or transactions, did not appear or testify at the trial. No party involved in any of the alleged events or transactions appeared *67 or testified. Mr. Hamdi was the only witness, and the Court did not find him to be a credible witness. Based on the record as a whole, and the Court's opportunity to observe Mr. Hamdi's demeanor and determine his credibility, the Court is satisfied that the various Schedules C are *68 nothing but shams and fabrications concocted by Mr. Hamdi. The HER Vocational Training Center was intended to be a nonprofit, section 501(c)(3) school, but that school admittedly never went into operation. See supra notes 2 and 3. The alleged "for profit" HER Vocational Training Center was a figment of Mr. Hamdi's imagination or wishful thinking. See supra note 2. It would have been a plausible argument for Mr. Hamdi to have reported his W-2 wage income for his services to the BOC Flint Engineering Center on a Schedule C and claim that he was performing engineering services as an independent contractor. Nevertheless, the Schedule C expenses claimed in connection with that work were not proved. Neither the fact nor the amount of the claimed expenses was established. Moreover, such expenses, if paid or incurred, were neither ordinary and necessary nor reasonable in amount. The Court did not believe Mr. Hamdi's testimony that Mrs. Hamdi performed engineering services for him and that he paid her for such services. The Court did not believe his testimony that his three young children actually rendered services or that he actually paid for such services. The Court did *69 not believe his testimony that he and his wife paid rent to their 6-year-old son for the Elmdale property. In the 1985 application for the section 501(c)(3) exemption for the proposed nonprofit HER Vocational Training Center, respondent was advised that the Elmdale property had been contributed to the school, 50 percent by Mr. Hamdi and 50 percent by a Mr. M.A. Hamdi, presumably his son, Mahamad. ACRO, which hired Mr. Hamdi to perform services for the BOC Flint Engineering Center, paid him his W-2 wages and also paid him a per diem allowance to include travel to the center. Neither ACRO nor the BOC Flint Engineering Center furnished Mr. Hamdi any space to work, and he was expected to, and did, perform the services in his office at his Mound Road residence. Respondent has conceded that Mr. Hamdi had an office in his Mound Road residence and that such office was his principal place of business for the services rendered to the BOC Flint Engineering Center. The Court accepts those concessions. Respondent has conceded that certain portions of the rent, utilities, and telephone expenses of the Mound Road residence are proper home office deductions. The Court rejects petitioners' *70 argument that they should be allowed 50 percent of the total rent, utilities, and telephone expenses. The Court cannot find any amounts of home office expense greater than those conceded by respondent. As to Mrs. Hamdi's Schedule C for Omar Engineering Company, the Court is satisfied that this too is another figment of Mr. Hamdi's fertile imagination. The record does not establish that Mr. Hamdi or HER Vocational Training Center paid Mrs. Hamdi for any engineering services. The record does not establish that in 1985 or 1986 Mrs. Hamdi had any income-producing activities other than her full-time engineering job with TACOM. The Court accepts that petitioners hoped to develop an engineering consulting business, but the record does not establish that any such business was in operation in 1985 or 1986. Obtaining employer ID numbers and printing up brochures entitled "Hamdi Engineering and Research" and "Omar Engineering Co." may be preliminary steps toward establishing such a consulting business, but cannot be equated with an actual operating business. The record as a whole establishes that in 1985 and 1986 petitioners simply tried to reduce their taxes by claiming phony and grossly *71 inflated deductions for portions of Mr. Hamdi's W-2 wage income that he attempted to assign to other members of the family. Respondent properly disallowed the net Schedules C losses and the Forms 2106 employee business expenses. Petitioners did not file a Schedule A for 1985 and did not claim any Schedule A itemized deductions that year. Respondent has now conceded they are entitled to certain Schedule A deductions, including some Schedule A employee business expenses (the office in the home expenses and certain publications and dues expenses). The amounts conceded by respondent are found by the Court. Petitioners did not prove that they are entitled to any larger amounts for those items. Also petitioners did not prove the claimed $ 14,000 plus medical expense allegedly incurred and paid in Egypt in 1985, nor did they prove that they had suffered a deductible theft loss for 1985. Petitioners established that they paid $ 900 to Northeastern University in 1985 for Mrs. Hamdi's tuition for the school years 1983 and 1984, when she was working on her master's degree in electrical engineering. That item, however, is not a deductible educational expense, because she either did not *72 have a trade or business or the education qualified her for a new trade or business. Robinson v. Commissioner, 78 T.C. 550, 552 (1982); Reisinger v. Commissioner, 71 T.C. 568, 572, 574 (1979); Davis v. Commissioner, 65 T.C. 1014, 1018-1019 (1976); Glenn v. Commissioner, 62 T.C. 270, 274-275 (1974); [9]sec. 1.162-5(b)(1), (2), and (3), Income Tax Regs.
Petitioners argue, on brief, that this educational expense is deductible because it maintained or improved Mrs. Hamdi's skills for her position as a teaching assistant at Northeastern University. There is no factual support in the record for that argument. The position of teaching assistant is normally considered to be a temporary position to help a student meet tuition expenses or to satisfy course requirements of the degree program she is pursuing. The *73 record does not show that Mrs. Hamdi pursued the master's degree program in order to work as a teaching assistant, and we think such an argument would be ludicrous on its face. While Mrs. Hamdi already had an undergraduate engineering degree, the record does not establish that she had previously worked as an engineer so as to be considered as having a trade or business as an engineer. As the above cited cases show, the mere possession of a professional degree or certificate or even brief periods of work in the field will not suffice to place one in the trade or business of being an engineer. The Court has accepted respondent's concessions as to various allowable Schedule A itemized deductions to which petitioners are entitled for 1985. Petitioners simply have not proved any additional deductible expenses (whether labeled as Schedule A itemized deductions, employee business expenses, or as Schedule C expenses) for either year. Negligence Additions
Respondent also determined negligence additions under section 6653(a) each year. Petitioners also bear the burden of proof on this item. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). "Negligence *74 is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). Taxpayers have a duty to file accurate returns and cannot avoid that duty by shifting the responsibility to an agent. United States v. Boyle, 469 U.S. 241, 250-251 (1985); Pritchett v. Commissioner, 63 T.C. 149, 174 (1974); Enoch v. Commissioner, 57 T.C. 781, 802-803 (1972). In some instances, taxpayers can avoid the negligence addition if they have furnished all of the relevant information to a tax professional or return preparer and relied on that person's professional advice as to the proper tax treatment. Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Pessin v. Commissioner, 59 T.C. 473, 489 (1972). However, any reliance upon professional tax advice must *75 be reasonable. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011, 1017 (5th Cir. 1990), affd. on another issue 501 U.S.     (1991). Here petitioners' returns were signed by a return preparer, but that individual did not appear or testify at the trial. The Court does not know what information or documents petitioners provided to their return preparer. However, the items and amounts claimed on the Schedules C and Forms 2106 involved purely factual matters. The facts were peculiarly within the personal knowledge of petitioners themselves and did not require the legal advice of a tax professional. Petitioners do not suggest reliance on their return preparer. They argue instead that the deductions should be allowed because similar deductions had been allowed in prior years. That argument is not well taken, as the Court advised Mr. Hamdi during the trial. [10] *77 Each tax year stands on its own and must be separately considered. United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969). Taxpayers have no right to continue a prior tax treatment that was wrong, either on the *76 law or under the facts. Thomas v. Commissioner, 92 T.C. 206, 226-227 (1989). [11] "The mere fact that petitioner may have obtained a windfall in prior years does not entitle it to like treatment for the taxable year here in issue". Union Equity Cooperative Exchange v. Commissioner, 58 T.C. 397, 408 (1972), affd. 481 F.2d 812 (10th Cir. 1973). The record amply supports the negligence additions. Petitioners were grossly negligent in claiming their phony and inflated deductions. The Court sustains respondent's determination of negligence each year. The entire underpayment each year is attributable to negligence. Substantial Understatements of Income Tax
Respondent also determined additions under section 6661 for a substantial understatement of income tax each year. A substantial understatement is defined as an amount that exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). There were such substantial understatements of income tax both years. Petitioners do not come within either of the provisions that permit a reduction of the amount of the understatement. There is no substantial authority for petitioners' treatment of their Schedule C and Form 2106 employee business expense deductions under section 6661(b)(2)(B)(i). Petitioners seem to argue that the fact that section 162(a) *78 is in the Code is sufficient. However, the facts of this case must bring their claimed deductions within the terms of the statute. The facts, which were peculiarly within petitioners' own personal knowledge, do not support their claimed deductions. Secondly, petitioners did not make adequate disclosure within the meaning of section 6661(b)(2)(B)(ii). The mere filing of Schedules C and Forms 2106 does not serve to disclose the underlying facts and true nature of petitioners' claimed deductions. Schirmer v. Commissioner, 89 T.C. 277, 284-286 (1987). [12] On the contrary, those Schedules C and Forms 2106 attempt to cloak their deductions with a verisimilitude that is misleading rather than revealing.
The Court sustains the additions for substantial understatements of income tax for both years. To reflect respondent's concessions and the Court's holdings, Decisions will be entered under Rule *79 155. Footnotes
1. For 1986 sec. 6653(a)(1)(A)↩ applies.
2. For 1986 sec. 6653(a)(1)(B)↩ applies.
1. The stipulation of facts contains few statements of facts. Basically the parties have merely stipulated that the various documents attached to the stipulation were submitted to the Internal Revenue Service by petitioners. Respondent does not concede that the documents substantiate the deductions claimed; respondent does not concede that the various transactions even occurred. Respondent's counsel agreed to this type of stipulation in an effort to place something before the Court. However, such a stipulation is not helpful to the Court. These documents have little or no probative value; they are neither self-explanatory nor self-proving, and most of them would not have been received in evidence had they been offered at the trial. These documents are largely self-serving, handwritten sheets of paper prepared by petitioner Abdelhamid Hamdi himself, without any corroborating or supporting documentary or testimonial evidence. For example, Mr. Hamdi prepared all of the alleged travel logs for petitioner Somayah Hamdi, who neither appeared nor testified at the trial. Such hearsay documents would not have been received by the Court unless she appeared to sponsor the exhibits and to be examined and cross-examined as to the underlying facts and events. Some of these documents were not prepared contemporaneously with the alleged events. The only witness at the trial was petitioner Abdelhamid Hamdi whom the Court did not find to be a credible witness.↩
2. Petitioners argue on brief that in addition to the HER Vocational Training Center (which they label as NP (nonprofit) HER VTC), there was a for profit corporation (which they label as FP HER VTC) of the same name which was part of Mr. Hamdi's separate Schedule C trade or business. Petitioners argue that respondent has confused the two entities. Petitioners have failed to establish that this alleged second business or corporation of the confusingly similar name ever existed. The two different Employer ID numbers that appear on certain documents are insufficient to establish that fact. The Court is satisfied that this argument is a mere afterthought and that the alleged FP HER VTC is basically a figment of Mr. Hamdi's imagination.↩
3. In his various efforts to obtain engineering consulting jobs, Mr. Hamdi tried to create the impression that he had a school and supporting staff behind him. This was an advertising gimmick rather than a reality.↩
4. These amounts, together with the $ 175 for tax return preparation fee, make up the total claimed miscellaneous itemized deductions of $ 1,096.↩
5. We note that if petitioners in 1985 received refunds of taxes paid in either 1983 or 1984 (i.e., a refund of 1983 or 1984 taxes, which refund was received by petitioners in 1985), such amounts may not be taxable to petitioners. In 1983 and 1984 petitioners did not claim Schedule A itemized deductions, and thus may not have received any tax benefit from any overpayment of taxes in those years. Thus, a refund of 1983 or 1984 taxes, if such taxes were not deducted in those years, may not constitute taxable income in 1985 when the refund was received.↩
6. The Court is satisfied that petitioners' claimed payments to their children for services and Mr. Hamdi's claimed payments to his wife for electrical engineering services are simply attempts to assign the parents' W-2 wage income and to avoid payment of taxes.↩
7. See also Jenkins v. Commissioner, T.C. Memo. 1988-292, affd. without published opinion 880 F.2d 414 (6th Cir. 1989); Furmanski v. Commissioner, T.C. Memo. 1974-47↩.
8. Under the Court's stipulation procedures the parties' executed stipulation and the exhibits attached thereto, when filed with the Court, "need not be offered formally to be considered in evidence." Rule 91(c). In this instance that resulted in many documents being considered in evidence that have little or no probative value and that the Court would not have admitted into evidence had they been offered individually. See supra↩ note 1. However, the fact that these documents are considered "in evidence" does not thereby endow them with evidentiary weight and value they do not otherwise possess. The Court as the finder of fact must weigh all of the evidence, documentary and testimonial, to determine the weight to be accorded to it.
9. See also Reisine v. Commissioner, T.C. Memo. 1970-310↩.
10. Despite the Court's advice to Mr. Hamdi that the argument was not well taken, petitioners persisted in the argument at some length in their 98-page reply brief. Also at the end of the trial, the Court advised Mr. Hamdi that his post-trial briefs had to be limited to the facts in the evidentiary record, that he could not use the briefs as an opportunity to tell the Court more "facts", and that if he did so, the Court would have to disregard such ex parte statements. The reply brief is replete with such ex parte statements, which the Court must disregard. The Court concludes that Mr. Hamdi will do what he wants to do, regardless of any advice he receives against that course of action.↩
11. See also Greene v. Commissioner, T.C. Memo. 1992-202↩.
12. See also Horwich v. Commissioner, T.C. Memo. 1991-465↩.