T.C. Summary Opinion 2017-93

UNITED STATES TAX COURT

MARY A. COLLIVER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15307-16S.                    Filed December 26, 2017.

Mary A. Colliver, pro se.

<u>Jason T. Scott</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the

                                                          (continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated May 13, 2016, respondent determined a deficiency of $4,512 in petitioner's 2013 Federal income tax.

After a concession,[2] the issue for decision is whether petitioner is entitled to deductions for various unreimbursed employee expenses, including education expenses, claimed for the year in issue.

Background

Some of the facts have been stipulated, and we incorporate the stipulation of facts by this reference. Petitioner resided in California when the petition was timely filed.

I.    Education and Professional History

Petitioner holds a bachelor's degree in speech-language pathology from California State University, Fresno, which she received in 1974. Petitioner worked in the brokerage business for a number of years. Sometime before

---

[1](...continued) Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round monetary amounts to the nearest dollar.

[2]Respondent concedes that petitioner substantiated a claimed tuition expense of $19,690 for 2013.

September 2008 petitioner changed careers, using her undergraduate degree to work in the speech-language pathology field. In 2008 Livingston Union School District (LUSD) suffered a shortage of credentialed speech-language pathologists and hired petitioner, who was not credentialed, subject to a temporary credential waiver from the State of California Commission on Teacher Credentialing (CCTC). Petitioner received three temporary credential waivers from CCTC, in effect for each of the 2008-09, 2009-10, and 2011-12 school years, reflecting the following:

> The Commission on Teacher Credentialing has approved a request for a credential waiver on behalf of the individual named above. Service on this waiver is restricted to the employing agency listed and to the authorization of the credential goal. The holder must fulfill his or her commitment to make progress toward obtaining his or her credential goal.
>
> **CREDENTIAL GOAL:**
> Speech-Language Pathology Services Credential
> * * *
> **EMPLOYMENT RESTRICTION(S)**:
> LIVINGSTON UNION SCHOOL DISTRICT, MERCED COUNTY OFFICE OF EDUCATION
> **SUBJECTS AND AUTHORIZATION(S):**
> Language, Speech and Hearing
> (R56A) This document authorizes the holder to provide clinical or rehabilitative services within the authorized field or fields listed to students in grades twelve and below, including preschool, and in classes organized primarily for adults.

**EDUCATION CODE REQUIREMENTS WAIVED:**
**44265.3** Program for Speech-Language Pathology Services
Credential
**SUBSEQUENT WAIVER(S)**:
The applicant must complete six semester or nine quarter units of
course work applicable toward the credential.

Petitioner also received a temporary credential waiver from CCTC to work for the Stanislaus County Office of Education (SCOE) for the 2012-13 school year. The terms of this waiver are identical to those of the earlier years, except that the waiver reflects "Stanislaus County Office of Education" as petitioner's employer.

Petitioner worked for SCOE as a speech-language pathologist from August 14, 2012, through June 12, 2013. Petitioner was an "itinerant"[3] worker and would drive to a number of schools and other sites in the area, including Alice Stroud Elementary School and Bernard L. Hughes Elementary School. It appears that after petitioner left her employment with SCOE in June 2013 she did not work for the remainder of the year.[4]

---

[3]This term was used by (1) petitioner and (2) a human resources specialist employed by SCOE in a letter dated August 28, 2015, in which she confirmed petitioner's employment during the year in issue.

[4]Petitioner testified: "I spent two years without pay, one year after my student teaching was completed - - first of all, I did all the coursework, then I had to do the student teaching, and then I spent an entire year working in the hospitals

(continued...)

The SCOE Administrative Handbook (administrative handbook) reflects SCOE's employee reimbursement policies for travel costs, meal expenses "during out of town travel, on official business", mileage, and other expenses, including relevant provisions as follows:

> SCOE will reimburse employees for ordinary and necessary expenses incurred while traveling 'away from their home' on official SCOE business or while at a conference either locally or away.
> * * *
> SCOE reimburses employees for meal expenses during out of town travel, on official business, at the current published IRS standard meal allowance rates depending on the area in which the employee travels to.
> * * *
> Mileage Reimbursement Claims are used when an employee travels for business purposes. Employees such as Itinerant Teachers, Nurses, etc. who travel from site-to-site using their personal vehicle as required for their job, use this form in order to be reimbursed for their mileage.
> * * *
> Incidental Reimbursement Claims are used for employee purchases over $100, field trips, repairs, or extenuating circumstances, when using personal funds.

The administrative handbook does not reference reimbursement policies for education expenses. SCOE did not reimburse petitioner for her expenses for her coursework.

---

[4](...continued)
with no pay." Additionally, during 2013 petitioner did not receive wage income from any employer other than SCOE, as we will discuss infra part II.

Sometime before 2013[5] petitioner enrolled in an online master's degree program at Nova Southeastern University (NSU). During 2013 petitioner continued to take courses through NSU in pursuit of her master's degree while also working for SCOE for the first half of 2013. In December 2015 petitioner received a master's degree and certificate of clinical competency (CCC), which qualified her as a medical speech pathologist. According to petitioner, this degree and certificate enabled her to perform additional tasks including working in a hospital and performing "modified barium swallow studies".

## II.   Tax Return

Petitioner's 2013 Form 1040, U.S. Individual Income Tax Return, was prepared and timely electronically filed by Ms. Montgomery. The 2013 Form 1040 reported total income of $80,084, including petitioner's wages of $27,445 from SCOE,[6] and claimed "above the line" deductions of $250 for educator expenses and $2,000 for tuition and fees expenses, thus reporting adjusted gross

---

[5]At trial petitioner testified that she began her master's degree program in 2010 or 2011. Petitioner's memorandum, which was written by her certified public accountant (C.P.A.), Linda Montgomery, indicates that petitioner began her master's degree program in 2008. Petitioner did not clarify this discrepancy.

[6]Petitioner also reported $82 of qualified dividend income, $3,000 of capital losses, $37,136 of IRA distribution income, $6,721 of rental real estate income, and $11,700 of unemployment income. Respondent does not assert nor does the record reflect that petitioner received additional taxable income in 2013.

income of $77,834. Attached to the 2013 Form 1040 was a Form 8917, Tuition and Fees Deduction. Also attached to the 2013 Form 1040 was a Schedule A, Itemized Deductions, claiming total deductions of $53,813, including a deduction of $24,510 for unreimbursed employee business expenses.[7] Attached to the Schedule A was a "TY 2013 Unreimbursed Expense Statement" reflecting the breakout of the unreimbursed employee business expenses as follows:

| Type of unreimbursed expense | Amount |
| --- | --- |
| Books/material/supplies | $4,923 |
| Clinic/practicum | 1,784 |
| Continuing education/1098 | 19,690 |
| Education credit | −2,000 |
| Educator expense deduction | −250 |
| Internet connectivity | 1,920 |
| Total | 26,067 |

Petitioner's return reflected tax of $2,573, withholding of $4,168, and an overpayment of $1,595.

---

[7]Petitioner claimed a deduction of $26,067, of which $24,510 exceeded 2% of her adjusted gross income (AGI) and was calculated as the deductible amount. See sec. 67(a) and (b).

Petitioner[8] prepared several undated summaries titled "Colliver's 2013 professional development" on which she totaled amounts for various expenses as follows:

| Title | Amount |
|---|---|
| Professional development clinic/travel/gas | $1,309 |
| Professional development uniform | 237 |
| Professional development supplies | 2,351 |
| Professional development clinic/food | 475 |
| Professional development copies/fax/postage | 772 |
| Total | 5,144 |

Petitioner did not claim deductions for these expenses on her 2013 Form 1040.

III.   Notice of Deficiency

In the notice of deficiency respondent disallowed the entire $24,510 deduction for unreimbursed employee business expenses. Petitioner timely filed a petition in which she asserts that the reported expenses are "fully deductible" because "IRC permits credentialed teachers to enhance/improve skills with additional coursework".

_____

[8]The parties stipulated that these summaries and the attached copies of underlying receipts were "provided by [p]etitioner". It is unclear from the record whether these summaries were prepared by petitioner or by Ms. Montgomery. In any event we assume petitioner agrees with and approves any documents prepared by her C.P.A.

## Discussion

I.    Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner did not allege or otherwise show that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioner bears the burden of proof. See Rule 142(a).

II.   Section 162 Expenses Generally

Deductions are a matter of legislative grace, and a taxpayer is required to maintain records sufficient to substantiate expenses underlying deductions claimed on his or her return. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.; see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Section 162(a) generally allows deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. In general, no deduction is permitted for personal, living, or family expenses. Sec. 262(a). The taxpayer bears the burden of proving that expenses

were of a business nature rather than personal and that they were ordinary and necessary. Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Generally, for an expenditure to be an ordinary and necessary business expense, the taxpayer must show a bona fide business purpose for the expenditure; there must be a proximate relationship between the expenditure and the business of the taxpayer. Challenge Mfg. Co. v. Commissioner, 37 T.C. 650, 659-660 (1962); Henry v. Commissioner, 36 T.C. 879, 884 (1961); sec. 1.162-1(a), Income Tax Regs. Whether an expenditure is ordinary and necessary is usually a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

III.    Unreimbursed Employee Business Expenses

Qualifying expenses under section 162 include expenses paid or incurred as an employee. Lucas v. Commissioner, 79 T.C. 1, 6 (1982). A taxpayer may deduct unreimbursed employee expenses incurred only as miscellaneous itemized deductions on Schedule A, and then only to the extent such expenses exceed 2% of the individual's AGI. Secs. 62(a)(2), 63(a), (d), 67(a) and (b), 162(a). Itemized deductions may be limited under the overall limitations on itemized deductions under section 68 and may have an alternative minimum tax implication under section 56(b)(1)(A)(i).

A.    Education Expenses

On her 2013 Form 1040 petitioner claimed deductions for the following unreimbursed employee business expenses related to her education:  (1) $19,960 for tuition; (2) $4,923 for "books/material/supplies"; (3) $1,784 for "clinic/practicum"; and (4) $1,920 for "internet connectivity".  Petitioner provided little explanation of her claimed deductions for expenses, and it appears that her position is that the additional deductions of $237 for "uniform" and of $772 for "copies/fax/postage" were also unreimbursed employee business expenses related to her education.[9]

Respondent concedes that petitioner substantiated  $19,690 in tuition expenses for 2013, but asserts that none of the claimed education expenses are deductible because petitioner's master's degree qualified her for a new trade or business.  Petitioner asserts that she paid her education expenses "to enhance and

[9]Petitioner did not provide an explanation for the "clinic/practicum" expense of $1,784.  To explain the "internet connectivity expense" petitioner testified:  "I live out in the country, so I did not have any internet service, so I had to use my AT&T telephone hotspot for my internet service.  A lot of repairs, a lot of breakdowns on my Dell computer, and that's in there as well."  To explain the uniform expense, petitioner testified that Horizon Health Sub-Acute, where she performed her "clinic hours" required for her master's degree, required that she wear "khaki pants, a Polo shirt, that kind of thing."  To explain the "copies/fax/postage" expense, petitioner testified that she "had a lot of mailings and overnights to Nova Southeastern Florida".

improve her existing trade or business as a credentialed teacher in the state of California."[10]

Section 1.162-5(a), Income Tax Regs., permits a deduction for education expenses that (1) maintain or improve skills required by the taxpayer in his employment, or (2) meet the express requirements of the taxpayer's employer, or of applicable law or regulations, imposed as a condition to the retention by the taxpayer of an established employment relationship, status, or rate of compensation. Expenses that fall into either of these categories are nevertheless not deductible if the education: (1) is required to meet the minimum education requirements for qualification in the taxpayer's employment or (2) qualifies the taxpayer for a new trade or business. Id. para. (b).

The minimum educational requirement for qualification in the taxpayer's employment is defined as "the minimum level of education (in terms of aggregate college hours or degree) which under the applicable laws or regulations, in effect at the time this individual is first employed in such position, is normally required of an individual initially being employed in such a position." Id. subpara. (2)(ii);

---

[10]We quote petitioner's memorandum, which was written by Ms. Montgomery. As already mentioned, and as we will discuss in more detail infra, petitioner did not obtain a speech-language pathologist credential from the State of California before or during the year in issue.

see also Orr v. Commissioner, T.C. Memo. 1992-566, 1992 WL 235185, at *4-*5.

Determining whether an employee meets the minimum education requirement

typically means that an employee must have a particular degree before being hired.

Orr v. Commissioner, 1992 WL 235185, at *4-*5; sec. 1.162-5(b)(2)(iii),

Examples (1), (2), and (3), Income Tax Regs. If a taxpayer does not have the

minimum education requirement for a position and is hired on a temporary basis,

contingent on meeting the education requirement, the taxpayer cannot deduct the

education expenses paid in obtaining that education. Sec. 1.162-5(b)(2)(iii),

Examples (1), (2), and (3), Income Tax Regs.

The Court applies an objective standard as to whether the education

qualifies the taxpayer for a new trade, and the relevant inquiry is the level of

responsibility before and after the education. Robinson v. Commissioner, 78 T.C.

550, 556-557 (1982). If the education qualifies a taxpayer to perform tasks and

activities significantly different from those he could before earning the degree,

then the taxpayer has qualified for a new trade or business. Id. at 552; Diaz v.

Commissioner, 70 T.C. 1067, 1074 (1978), aff'd without published opinion, 607

F.2d 995 (2d Cir. 1979); see also Glenn v. Commissioner, 62 T.C. 270, 278 (1974)

(finding that the taxpayer's law degree qualified him for a new trade or business

because he could not practice law before earning the degree).

An education that merely refines taxpayer's existing skills does not qualify him for a new trade or business. Robinson v. Commissioner, 78 T.C. at 557. A taxpayer is in the same trade or business if he is still in the same general field and still using the same skills; for example, moving from one position to another that also uses management, administrative, and planning skills. See Sherman v. Commissioner, T.C. Memo. 1977-301, 36 T.C.M. (CCH) 1191, 1193-1194 (1977).

First, we conclude that petitioner's education was required to meet the minimum education requirements for qualification in her employment as a speech-language pathologist. Petitioner testified that in the speech-language pathology field, "[w]ith a bachelor's degree you can't do anything, you must have a master[']s" degree and that a requirement to maintain the waivers which allowed her to work for LUSD and SCOE was that she complete her master's degree program within seven years. Petitioner testified that to remain in the waiver program she had to submit transcripts each semester to show that she was enrolled in a master's program, maintain the grade requirement for her classes (B+ or higher), and provide a letter from a graduate adviser from NSU.

Pursuant to the California Education Code, beginning January 1, 2007, a master's degree in speech-language pathology is one of the four requirements for obtaining a credential to work as a speech-language pathologist. Cal. Educ. Code

sec. 44265.3(a)(2) (West 2006). An individual who "holds or has been recommended for a master's degree" in speech-language pathology can be granted a preliminary credential. Id. sec. 44265.3(a)(1). When petitioner was initially hired by LUSD in 2008, and then when she was hired by SCOE in 2012, she was hired pursuant to such a preliminary credential (waiver) and she did not yet have the master's degree in speech-language pathology required by Cal. Educ. Code sec. 44265.3(a)(2). Instead, petitioner retained her position by providing documentation reflecting that she was making progress towards earning a master's degree. Therefore, the education expenses she paid in pursuit of her master's degree were for education that meets the minimum education requirements for qualification in her employment as a speech-language pathologist and are not deductible. Orr v. Commissioner, 1992 WL 235185, at *4-*5; sec. 1.162-5(b)(2)(ii) and (iii), Examples (1), (2), and (3), Income Tax Regs.

Additionally, it also appears that the master's degree qualified petitioner for a new trade or business. Petitioner provided little testimony or evidence to show the type of work she performed or her skills used as a speech-language pathologist before obtaining her master's degree and CCC. Additionally, petitioner testified that the master's degree and CCC qualified her as a medical speech pathologist, stating that now "I'm not just a school speech pathologist, I'm a medical speech

pathologist, so I can work in the hospital, do modified barium swallow studies, which I am doing at this time."

On the basis of this record, it appears that the tasks and activities that petitioner was qualified to perform after earning her master's degree and CCC were significantly different from those she could perform before pursuing this education. Before receiving her master's degree and CCC petitioner could not work at a hospital and perform "barium swallow studies". We conclude that petitioner has not met her burden of proving that the education did not qualify her for a new trade or business. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Robinson v. Commissioner, 78 T.C. at 556-557; Diaz v. Commissioner, 70 T.C. at 1074; Glenn v. Commissioner, 62 T.C. at 278; sec. 1.162-5(b)(2) and (3), Income Tax Regs.

As we have concluded that petitioner's education expenses are not deductible for the reasons described herein, we need not and do not consider the issues of whether petitioner substantiated these expenses.

B.    Other Expenses

Petitioner also asserts that she is entitled to deductions for the following unreimbursed employee business expenses relating to her work as a speech-language pathologist for SCOE, as reflected on her summaries:  (1) $1,309 for

"clinic/travel/gas" (gas); (2) $475 for "clinic/food" (meals); and (3) $2,351 for "supplies".

Travel expenses, including meals and lodging away from home, are subject to the strict substantiation rules of section 274(d). To satisfy the requirements of section 274(d), the taxpayer must prove with specificity the amount, time, place, and business purpose of the expense. Sec. 1.274-5T(b)(2) and (3), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985). The taxpayer also generally must maintain adequate records or documentary evidence corroborating the taxpayer's own statement which, in combination, is sufficient to establish each element of an expenditure or use. Id. para. (c)(1), 50 Fed. Reg. 46016-46017. Adequate records generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence. Id. para. (c)(2), 50 Fed. Reg. 46017. A taxpayer lacking a contemporaneous log is generally expected to maintain a record created as near in time as possible to the particular expenditure or business use (including the elements outlined above), supported by corroborative documentary evidence that carries with it a high degree of probative value. Id. para. (c)(1), 50 Fed. Reg. 46016-46017.

As previously discussed, qualifying expenses under section 162 include expenses paid or incurred as an employee. Lucas v. Commissioner, 79 T.C. at 6. Expenses are not "necessary" when an employee fails to claim reimbursement for expenses incurred in the course of his employment when entitled to do so. Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533. Accordingly, a taxpayer cannot deduct employee business expenses to the extent he is entitled to reimbursement from his employer for those expenses. See Lucas v. Commissioner, 79 T.C. at 7. Deductions for those expenses belong to the employer. See Kennelly v. Commissioner, 56 T.C. 936, 943 (1971), aff'd without published opinion, 456 F.2d 1335 (2d Cir. 1972).

The taxpayer bears the burden of proving that she is not entitled to reimbursement from her employer for such an expense. See Fountain v. Commissioner, 59 T.C. 696, 708 (1973). The taxpayer can prove that she was not entitled to reimbursement by showing, for example, that she was expected to bear these costs. See id.; see also Dunkelberger v. Commissioner, T.C. Memo. 1992-723, 1992 WL 379282, at *1 (finding that management team expected taxpayer to bear expense of business lunches with vendors). If a taxpayer cannot provide a valid explanation as to why she did not voluntarily seek reimbursement when she was eligible under her employer's policies, she is precluded from claiming a

deduction for an unreimbursed employee expense. Heidt v. Commissioner, 274 F.2d 25, 26-28 (7th Cir. 1959), aff'g T.C. Memo. 1959-31; Coplon v. Commissioner, T.C. Memo. 1959-34, 18 T.C.M. (CCH) 166, 167 (1959), aff'd, 277 F.2d 534 (6th Cir. 1960). An eligible taxpayer cannot refrain from seeking reimbursement so she can "convert the employer's right to a deduction into a right" of her own. Heidt v. Commissioner, 274 F.2d at 28; see also Coplon v. Commissioner, 18 T.C.M. (CCH) at 167.

For a number of reasons we conclude that petitioner is not entitled to deductions for these expenses. First, the bulk of the expenses reflected on petitioner's summaries was paid after she left her employment with SCOE on June 12, 2013.[11] Thus, these expenses appear to be nondeductible, personal expenses.[12] See sec. 262(a).

-----

[11]Petitioner's summaries reflect that approximately 90% of the receipts for the gas expenses, 75% of the receipts for the meals expenses, and 50% of the receipts for the supplies expenses were dated after June 12, 2013.

[12]The Court notes that a taxpayer may be engaged in a trade or business, although not working, if she was previously involved in and actively sought to continue in that trade or business while pursuing a defined degree program related to her line of work. Ford v. Commissioner, 56 T.C. 1300, 1304 (1971), aff'd, 487 F.2d 1025 (9th Cir. 1973). The taxpayer must clearly intend to seek employment in the same trade or business. Goldenberg v. Commissioner, T.C. Memo. 1993-150, 1993 WL 101367, at *4. We have previously concluded that petitioner has not shown that the education did not qualify her for a new trade or business; this

(continued...)

Additionally, petitioner did not meet her burden of proving a business purpose for the deduction for the supplies expenses. Petitioner's summaries reflect that in January, February, April, and May 2013 she made a number of purchases from Staples, two purchases from Best Buy, and two purchases from Macy's (one for "shoes" and one for "luggage"). Petitioner testified that she purchased supplies to use with the children she worked with as a speech-language pathologist, stating that "teachers have to provide a lot of their own materials. Speech pathologists * * * build up a battery of materials * * * including your own tests. The tests are like $300." Petitioner did not provide specific testimony or other evidence to establish the business purpose for each of these expenses. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Challenge Mfg. Co. v. Commissioner, 37 T.C. at 659-660; Henry v. Commissioner, 36 T.C. at 884; sec. 1.162-1(a), Income Tax Regs.

Further, petitioner did not adequately substantiate her gas and meals expenses as required by section 274(d). Petitioner testified that she is claiming a deduction for meal expenses because "the other itinerant speech pathologists were writing off their food as well." Petitioner also testified that as a speech-language

---

[12](...continued)
new trade or business of working as a medical speech pathologist is the one in which she was employed at the time of trial. Thus, this exception does not apply.

pathologist she would drive to various sites daily. Petitioner did not provide a contemporaneous travel log, asserting that it "would be impossible to keep a log" because her schedule and her assigned work sites often changed at the last minute. Petitioner's summaries reflect the dates, vendors, and amounts shown on the attached receipts. Her summaries are undated, and it is unclear when they were prepared; they do not carry a high degree of probative value. Petitioner did not testify or provide other evidence to establish the specific business purpose for each of these expenses. For these reasons, petitioner did not meet the strict substantiation requirements of section 274(d). See sec. 274(d); sec. 1.274-5T(b)(2) and (3), (c)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46017.

Finally, petitioner did not meet her burden of proving that she was not entitled to reimbursement for the expenses paid while she was an employee of SCOE. Petitioner testified at trial that SCOE did not reimburse her for supplies she purchased to use with her students for her work as a speech-language pathologist, but did not provide an explanation as to whether she did not seek reimbursement or was denied reimbursement. When the Court questioned petitioner as to whether she received reimbursement from SCOE for her travel, she testified: "No. I did ask one time, my supervisor, and she said no * * * I believe

 * * * the first couple of months when I started". When questioned as to whether SCOE had a travel reimbursement policy, petitioner testified that "[t]hey did not offer it to me when I inquired about it. I never submitted anything to my accountant. If they had reimbursed me for my mileage, I would have definitely taken advantage of it."

Petitioner's testimony about her purported request for reimbursement for her travel expenses was vague, and it is unclear why she believed that she would have submitted something to her accountant for purposes of reimbursement from SCOE. It is also unclear whether petitioner read the SCOE administrative handbook during her employment with SCOE. The SCOE handbook reflects policies which might have covered expenses for which petitioner is seeking a deduction; for example, it appears that petitioner could have requested reimbursement for mileage driven between sites as a speech-language pathologist. Petitioner did not provide further testimony or other evidence with specific examples as to whether or how she was denied a request for reimbursement. For these reasons, petitioner did not meet her burden of establishing that she was not entitled to reimbursement for these expenses. See Heidt v. Commissioner, 274 F.2d at 26-28; Fountain v. Commissioner, 59 T.C. at 708; Dunkelberger v.

Commissioner, 1992 WL 379282, at *1; Coplon v. Commissioner, 18 T.C.M. (CCH) at 167.

Therefore, petitioner is not entitled to any of the claimed deductions for her gas, meals, or supplies expenses.

IV.    Trial and Posttrial Matters

The Court notes that petitioner's testimony was disorganized and vague with respect to many facts and issues.  Petitioner, who was self-represented in this proceeding, did not appear familiar with the contents of her own 2013 Form 1040; and she repeatedly asked to consult with Ms. Montgomery, who was present in the courtroom.  The Court's efforts to encourage petitioner to provide explanations which might enhance the factual record were often thwarted by her reliance on Ms. Montgomery.

After trial petitioner made a number of requests to the Court that she be allowed to submit additional evidence into the record.  In an attempt to give petitioner every opportunity to make a complete record in this proceeding the Court issued orders encouraging the parties to communicate with one another to submit a supplemental stipulation.  Unfortunately, the disorganization and failure to follow and/or understand the Court's directions continued.  In an order served August 24, 2017, the Court indicated as follows:

This matter was submitted to the Court after a trial in San Francisco, California on April 24, 2017. One of the issues before the Court is whether petitioner can deduct, as an unreimbursed employee business expense, her claimed education costs for 2013. After the case was submitted, petitioner expressed concern that there was additional documentation she failed to offer into evidence. By Order dated May 8, 2017, the Court indicated that it would consider reopening the record if the parties could lodge a supplemental stipulation of facts and directed the parties to consult for the purpose of considering submission of a supplemental stipulation of facts. In response to this Order the parties filed separate status reports which reflected that they had not come to an agreement as to a supplemental stipulation of facts. Additionally, on June 28, 2017, petitioner lodged a Supplemental Stipulation of Facts which was drafted solely by petitioner and was not signed by respondent. By Order dated July, 2017, the parties were again directed to consult for the purpose of considering submission of a supplemental stipulation of facts. Petitioner was advised that (1) the Court cannot file a stipulation of facts that does not contain the original signature of all the parties and (2) to the extent that her proposed supplemental stipulation contained arguments and conclusions of law, it did not appear appropriate for stipulation.

On August 15, 2017, petitioner mailed in her status report, which was filed by the Court on August 21, 2017. Petitioner states that she and her certified public accountant Linda Montgomery spoke with respondent by telephone on July 26, 2017. Petitioner also states that on August 1, 2017, she sent via facsimile a copy of a 'revised supplemental stipulation in which Petitioner removed the references to the Internal Revenue Code and/or Treasury Regulations as the Court had advised that these were not appropriate.' Petitioner attached to her status report a copy of this proposed revised supplemental stipulation of facts (revised stipulation) as Exhibit F. In this revised stipulation petitioner presented some arguments and conclusions, including a citation to Kopaigora v. Commissioner, T.C. Summary Opinion 2016-25, and the conclusion that petitioner's education for which she claimed deductions did not qualify her for a

new trade or business.  Petitioner also requests that the Court 'allow her to deduct her educational expenses in full.'

On August 18, 2017, respondent filed a status report advising as to the current status of the case.  In the status report respondent advises that he spoke with petitioner and her tax preparer about the supplemental stipulation of facts which petitioner lodged on June 28, 2017, and that '[a]fter this discussion and further review of Petitioner's Supplemental Stipulation of Facts, Respondent is not able to agree with Petitioner's Supplemental Stipulation of Facts because the documents contain conclusions of law, are duplicative, or do not relate to the issue of Petitioner's substantiation of her issues.'  Respondent also states that 'due to discussions and new information provided, Respondent will concede that Petitioner received $30,982.00 in federal aid and therefore has substantiated that her claimed tuition expenses in the amount of $19,690 were paid and incurred.'  Respondent also reasserts his position that petitioner's tuition expenses are not deductible because the education qualified petitioner for a new trade or business.

Petitioner is again advised that the Court cannot file a stipulation of facts that is not agreed to and does not contain the original signatures of all the parties.  Respondent has made clear that he does not agree to the assertions in petitioner's proposed supplemental stipulation of facts, which was lodged on June 28, 2017.  The Court notes that petitioner's revised stipulation also presents some arguments and conclusions and also does not appear appropriate for stipulation in its current form.

Petitioner is further advised that the Court will not grant petitioner's request to allow her to deduct her educational expenses for 2013 in full at this time.  Since the parties have not agreed to a supplemental stipulation of facts, the Court will not reopen the record.  The Court will, however, accept respondent's concessions made in his status reports that (1) petitioner received $30,982 in Federal aid in 2013 and (2) petitioner has substantiated her claimed tuition expenses in the amount of $19,690 for 2013.  The Court will

proceed to consider this matter based on the record and render an opinion in due course.

The Court recognizes that petitioner is self-represented. The Court gave petitioner opportunities, as detailed herein, to provide respondent with additional documentation and collaborate on a mutually agreed supplemental stipulation of facts. Petitioner did not take full advantage of these opportunities, and thus the Court did not reopen the record.[13]

## V.     Conclusion

For the reasons stated above, we conclude that petitioner is not entitled to deductions for any of the reported expenses. Respondent did not disallow petitioner's "above the line" deductions of $250 for educator expenses and $2,000 for tuition and fees expenses. Thus, petitioner has already received a tax benefit for some of the claimed deductions.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

---

[13]The Court notes that the time for presenting evidence is at trial. Generally, the Court does not try a case piecemeal. The general rule is that evidence may not be submitted after the trial has been concluded and the record closed. Reopening the record to receive additional evidence is a matter within the discretion of the trial court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331-332 (1971).

To reflect the foregoing,

Decision will be entered for

respondent.